**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed January 22, 2019.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-18-00175-CV

**TOP CAT READY MIX, LLC, Appellant**
**V.**
**ALLIANCE TRUCKING, L.P., Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-07419**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Osborne
Opinion by Justice Molberg

The trial court granted summary judgment in favor of Alliance Trucking, L.P. (Alliance) on its suit on a sworn account against Top Cat Ready Mix, LLC (Top Cat) and awarded Alliance $315,087.21 in actual damages, $198,739.63 for "contractual pre-judgment interest," attorney's fees of $70,000 in the trial court and $25,000 for an unsuccessful appeal by Top Cat to this Court, and post-judgment interest on actual damages "at the contractual rate of 18% per annum."

In two issues, Top Cat contends the trial court erred by awarding Alliance (1) the "contractual [interest] rate of 18% per annum" because the summary judgment evidence did not conclusively establish Top Cat agreed to pay the interest rate and the interest rate awarded is usurious, and (2) attorney's fees because Top Cat is not an entity subject to an attorney's fees

award under section 38.001 of the civil practice and remedies code and Alliance failed to conclusively establish it was entitled to the amount of fees awarded by the trial court.

Top Cat has not challenged the trial court's grant of summary judgment in favor of Alliance on its suit on a sworn account and on Top Cat's counterclaims against Alliance. Accordingly, we affirm the trial court's summary judgment that Alliance recover from Top Cap $315,087.21 in actual damages on its suit on a sworn account and Top Cat take nothing on its counterclaims. We reverse the trial court's summary judgment to the extent it awards Alliance eighteen percent per annum pre-judgment and post-judgment contractual interest and attorney's fees and remand those issues to the trial court for further proceedings.

## Procedural Background

Alliance is a trucking company that provides commercial transportation and delivery services for construction industry materials. Top Cat is a concrete mixing company. Top Cat contracted with Alliance to source, purchase, and deliver aggregate materials needed to make concrete.[1] From approximately July 7, 2013, to October 13, 2013, Alliance mailed twelve invoices to Top Cap for purchases and deliveries of aggregate materials. Each invoice stated, "Interest will accrue at the rate of 1.5% per month starting 60 days from INVOICE DATE." Top Cat made partial payment on the first invoice, but made no subsequent payments.

Alliance sued Top Cat on a sworn account and for breach of contract, or alternatively quantum meruit. Alliance sought to recover $391,087.21, consisting of the unpaid balance of the invoices and contractual interest, and attorney's fees. Top Cat filed a verified denial that Alliance had applied "all lawful offsets, payments, and credits" to the account. Top Cat specifically asserted that, because Alliance delivered substandard or defective materials, Top Cat was forced to purchase replacement materials. Top Cat also raised the affirmative defenses of offset, discharge

---

[1] Aggregates are the raw materials needed to make concrete, such as gravel, sand, and limestone.

–2–

due to Alliance's material breach of contract, and express contract. Top Cat brought counterclaims against Alliance for breach of contract, fraud by nondisclosure, and breach of implied warranties.

Alliance filed an amended third motion for no-evidence and traditional summary judgment (motion for summary judgment). Alliance moved for traditional summary judgment on its sworn account suit and for no-evidence and traditional summary judgment on Top Cat's counterclaims. Finding there was no genuine issue of material fact as to the claims between Alliance and Top Cat, the trial court granted Alliance's motion for summary judgment; awarded Alliance $315,087.21 in actual damages, $198,739.63 in "contractual pre-judgment interest," post-judgment interest on actual damages at an annual "contractual rate of 18%," post-judgment interest on all other damages at "the rate of 5% per annum," $70,000 in attorney's fees through entry of summary judgment, and $25,000 in attorney's fees in the event of an unsuccessful appeal by Top Cat to this Court; and ordered Top Cat take nothing on its counterclaims against Alliance.

**Standard of Review**

In this appeal, Top Cat challenges only the trial court's award of contractual interest and attorney's fees, issues on which Alliance moved for traditional summary judgment. We review the trial court's ruling on a motion for summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant has the burden to demonstrate there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. Once the movant produces sufficient evidence to establish its right to judgment, the burden shifts to the non-movant to come forward with competent controverting evidence sufficient to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84.

In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant, making every reasonable inference and resolving all doubts in the non-movant's

favor. *Id.* We credit evidence favorable to the nonmovant if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Samson Exploration, LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. *Lakshmi Realty, LLC v. Firewheel Brokerage PLLC*, No. 05-17-00142-CV, 2018 WL 1602583, at *2 (Tex. App.—Dallas Apr. 3, 2018, no pet.).

## Interest Rate Award

In its first issue, Top Cat argues the trial court erred by awarding Alliance contractual interest because the interest rate is usurious and the summary judgment evidence does not conclusively establish Top Cat agreed to pay an interest rate of eighteen percent per annum.

### *Usury*

Usury as a matter of avoidance should be pleaded as an affirmative defense. *Apodaca v. Rios*, 163 S.W.3d 297, 305 (Tex. App.—El Paso 2005, no pet.); *see also* TEX. R. CIV. P. 94; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991). Further, rule of civil procedure 93 requires an affirmative defense of usury to be verified by affidavit. TEX. R. CIV. P. 93(11); *Apodaca*, 163 S.W.3d at 305. "[P]arties who do not follow rule 93's mandate waive any right to complain about the matter on appeal." *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). Top Cat did not file a verified answer asserting the affirmative defense of usury. Therefore, it failed to preserve its complaint on appeal that the interest rate charged by Alliance was usurious. *See id.*[2]

### *Contractual Interest*

Top Cat also complains that Alliance failed to conclusively prove Top Cat agreed to pay contractual interest of eighteen percent per annum. To prove a sworn account, the plaintiff must

---

[2] *See also Chrissokos v. Chrissikos*, No. 05-00-01548-CV, 2002 WL 342653, at *5 (Tex. App.—Dallas Mar. 6, 2002, pet. denied) (not designated for publication).

show: (1) the sale and delivery of merchandise or performance of services, (2) the amount or prices were either charged in accordance with an agreement or were customary and reasonable, and (3) the amount is unpaid. *Peerless Indem. Ins. Co. v. GLS Masonry, Inc.*, No. 05-16-00875-CV, 2018 WL 3491045, at *7 (Tex. App.—Dallas July 20, 2018, no pet.) (mem. op.). Therefore, because Alliance sought summary judgment on its claim for contractual interest based on a sworn account, it was required to conclusively prove Top Cat agreed to pay the interest or the interest was customary and reasonable.

As summary judgment evidence, Alliance relied on two affidavits from Eric Dance, its Chief Financial Officer; the affidavit of Paul Patterson, its "GM"; the deposition testimony and affidavit of Ramõn Carrsquillo, its expert on the quality of the aggregate provided to Top Cat; the deposition testimony of Gary Reeder, Top Cat's general manager; the affidavit of Berlin Stoute, a dispatcher for Alliance; and the declaration of Frank Broyles, Alliance's attorney. As relevant to this issue, the summary judgment evidence established: (i) Alliance provided trucking and gravel purchasing services for Top Cat from July 1, 2013, through November 2013; (ii) Top Cat agreed that, in exchange for Alliance's services, it would pay Alliance's "customary charges for its trucking services plus the cost of the gravel purchased by [Alliance] plus a nominal mark up over the actual cost of the gravel"; (iii) the twelve invoices Alliance mailed to Top Cat included a statement that "interest will accrue at the rate of 1.5% per month starting 60 days from INVOICE DATE"; (iv) Top Cat paid $18,811.27 of the $19,321.25 due on the first invoice, but made no other payments; (v) the balance owed by Top Cat was $315,087.21; (vi) Alliance had charged $194,233.32 in interest on the balance; and (vi) Alliance sought to recover from Top Cat "$509,320.53 plus pre and post judgment interest of $155.39 per day from April 11, 2017 until paid plus all recoverable litigation costs including but not limited to a reasonable and necessary

attorney's fee." Top Cat responded to the motion for summary judgment, but offered no evidence relating to whether it agreed to pay contractual interest on Alliance's charges.

There is no summary judgment evidence that Top Cat expressly agreed to pay the contractual interest. Rather, the summary judgment evidence established only that Top Cat agreed to pay Alliance's "customary charges," without stating what those charges were or that the charges included contractual interest. The issue, therefore, is whether Alliance conclusively established there was an implied agreement that Top Cat would pay the contractual interest.

Relying on *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme, Enterprises*, 625 S.W.2d 295 (Tex. 1981), which is not a summary judgment case, Alliance argues the summary judgment evidence established a course of dealing between it and Top Cat that created an implied agreement to pay contractual interest. In *Preston Farm*, Bio-Zyme sold stock feed to Ken Vanderhoof and his corporation, Preston Farm, (collectively Preston Farm) on an open account. *Id.* at 296. Bio-Zyme sent an invoice with the shipments of feed purchased by Preston Farm. *Id.* Each invoice contained the statement that accounts not paid within thirty days would be charged one percent each month. *Id.* Preston Farm failed to pay all the invoices, and Bio-Zyme brought suit on a sworn account. *Id.* After a bench trial, the trial court found Preston Farm had agreed to pay the one percent per month service charge. *Id.* at 297.

The issue before the supreme court in *Preston Farm* was not whether the evidence conclusively established the existence of an agreement; rather the court was required to determine if there was any evidence to support the trial court's finding an agreement existed. *See id.* at 298. The supreme court noted that when the existence of an agreement is disputed, it is generally a question of fact as to whether an agreement was reached by the parties. *Id.* It then considered whether there was evidence of a course of conduct between the parties that gave rise to an agreement to pay interest and concluded that evidence the parties had extensive dealings with one

another, the sales continued for over a year, Preston Farms received a statement each month containing the service charge provision, many of the statement plainly and conspicuously stated that service charges had been imposed, Preston Farm continued its credit purchases and continued to accept the goods Bio-Zyme shipped, Preston Farm never objected to the services charges, Preston Farm paid service charges on the debt, and Vanderhoof admitted at trial that he agreed with the charges to the account until he found out "very, very recently" that too much interest had been charged was sufficient to support the trial court's finding an agreement existed. *Id.* at 298.

Subsequently, in *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 445–56 (Tex. 1982), the supreme court addressed whether the evidence was sufficient to raise a fact question on the existence of an implied agreement to pay contractual interest. Triton Oil and Marine Contractors signed a letter agreement pursuant to which Triton Oil was to drill, complete, equip, and maintain a well for the production of oil and gas. *Id.* at 444. Marine Contractors failed to pay its share of the costs, and Triton Oil began charging Marine Contractors ten percent interest on the unpaid balance and sent invoices each month reflecting that charge. *Id.* After Triton Oil sued Marine Contractors, seeking to recover costs it claimed Marine Contractors owed under the letter agreement, plus ten percent contractual interest, Marine Contractors filed a counterclaim for usury, alleging the letter agreement did not provide for interest. *Id.* Because the letter agreement did not provide for interest, and Triton Oil had charged a ten percent interest rate on the unpaid amounts, Marine Contractors established a prima facie case of usury. *Id.* at 445. In order to overcome this prima facie case and raise a fact question, Triton Oil had the burden to produce sufficient evidence of an agreement to pay the contractual interest. *Id.*

Triton Oil introduced evidence that it sent invoices to Marine Contractors containing an interest rate of ten percent per annum, Marine Contractors never objected to the charges, and although Marine Contractors did not pay the charges, Triton Oil deducted the charges from Marine

Contractors' share of the proceeds from the well. *Id.* Citing to *Preston Farms*, the supreme court concluded Triton Oil's "unilateral act" of charging interest on its invoices and deducting those charges from what it owed to Marine Contractors was not evidence of an agreement to pay the charged interest. *Id.* at 445–46. Further, although Marine Contractors did not object to the charges, it also did not pay them. *Id.* at 446. The supreme court concluded Triton Oil's evidence was insufficient to raise a fact question as to the existence of an agreement to pay contractual interest. *Id.* at 446.

The issue before us is whether Alliance conclusively established an implied agreement by Top Cat to pay contractual interest, an analysis controlled by *Triton Oil*. Alliance met its summary judgment burden only if ordinary minds could not differ as to the conclusion to be drawn from its evidence. *Id.* Unless Alliance carried this burden, Top Cat was not required to present any summary judgment that it did not agree to pay contractual interest. *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972) ("In our summary judgment practice, the opponent's silence never improves the quality of the movant's evidence.").

Alliance's summary judgment evidence established Top Cat agreed to pay Alliance's "customary charges," Top Cat used Alliance's trucking services for approximately five months, Alliance sent twelve invoices that included a provision stating contractual interest would be charged, and Top Cat partially paid the first invoice. However, there was no evidence Top Cat agreed to the contractual interest charge or paid any of the charges. Without evidence of conduct by Top Cat indicating it accepted the contractual interest, Alliance's unilateral acts of charging interest on the invoices is not evidence of an agreement as to the contractual interest charge. *See Triton Oil & Gas Corp.*, 644 S.W.2d at 445–46; *Int'l Metal Sales, Inc. v. Global Steel Corp.*, No. 03-07-00172-CV, 2010 WL 1170218, at *11 (Tex. App.—Austin Mar. 24, 2010, pet. denied). The summary judgment evidence, therefore, did not conclusively establish an implied agreement by

Top Cat to pay the contractual interest. *See Triton Oil & Gas Corp.*, 644 S.W.2d at 445–46; *Preston Farm & Ranch Supply, Inc.*, 625 S.W.2d at 298 (concluding existence of agreement is generally question of fact).

Because Alliance failed to meet it burden to conclusively establish Top Cat agreed to pay contractual interest, the trial court erred by awarding Alliance eighteen percent per annum pre-judgment and post-judgment interest. We resolve Top Cat's first issue in its favor.

**Attorney's Fees**

Before filing suit, Alliance provided notice to Top Cat that if it failed to pay the outstanding invoices, Alliance would file suit and seek to recover its attorney's fees under chapter 38 of the civil practice and remedies code. Alliance moved for summary judgment on its request for attorney's fees. The trial court granted the motion and awarded Alliance $70,000 in attorney's fees through trial and an additional $25,000 in attorney's fees in the event of an unsuccessful appeal by Top Cat to this Court. In its second issue, Top Cat contends the trial court erred by awarding Alliance attorney's fees because (1) Top Cat is not an individual or corporation and thus is not an entity against which attorney's fees may be recovered under section 38.001 of the civil practice and remedies code, and (2) the evidence does not conclusively establish Alliance is entitled to the amount of fees awarded by the trial court because the award "is wholly unreasonable and does not relate to the actual fees incurred by Alliance" and includes "recovery of nontaxable incidental costs."

*Fees Under Section 38.001*

Texas follows the American Rule with respect to recovery of attorney's fees, meaning "litigants may recover attorney's fees only if specifically provided for by statute or contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Section 38.001 of the civil practice and remedies code provides that "[a] person may recover reasonable attorney's fees from an individual or

corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (7) a sworn account; or (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (7), (8). Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees. *Phoneternet, LLC v. Drawbridge Design*, No. 05-17-00890-CV, 2018 WL 3238001, at *3 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.) ("We conclude section 38.001 of the Texas Civil Practice and Remedies Code does not permit recovery of attorney fees against a limited liability company."); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452-454 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (corporations and LLCs are distinct entities, "use of the term 'corporation' does not encompass an LLC" under section 38.001)

Texas Rule of Civil Procedure 93 provides that pleadings asserting certain defenses shall be verified by affidavit "unless the truth of such matters appear[s] of record." TEX. R. CIV. P. 93; *see also John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 653 (Tex. App.—Dallas 2013, pet. denied) ("[W]hen a case falls within one of the categories defined by rule 93, a general denial is insufficient; the defendant must provide a verified denial, supported by an affidavit based on personal knowledge."). Specifically, rule 93 requires a party to file a pleading verified by affidavit to raise the defense that "any party alleged in any pleading to be a corporation is not incorporated as alleged." TEX. R. CIV. P. 93(6); *see also Coffin v. Finnegan's, Inc.*, No. 06-01-00171-CV, 2003 WL 21756653, at *2 (Tex. App.—Texarkana July 11, 2003, no pet.) (mem. op.).[3] "[P]arties who do not follow Rule 93's mandate waive any right to complain about the matter on appeal." *Nootsie*, 925 S.W.2d at 662; *see also John C. Flood of DC, Inc.*, 408 S.W.3d at 653.

---

[3] *See also* TEX. R. CIV. P. 52 ("An allegation that a corporation is incorporated shall be taken as true, unless denied by the affidavit of the adverse party, his agent or attorney, whether such corporation is a public or private corporation and however created.").

Alliance sued Top Cat as "a domestic, for-profit limited liability corporation authorized to do business in the State of Texas with its principal office in Ennis, Texas." Top Cat did not file a rule 93 verified affidavit denying that it is a corporation as alleged and, therefore, failed to preserve its complaint that it is not an entity against which attorney's fees may be awarded under section 38.001. *See Nootsie*, 925 S.W.2d at 662; *John C. Flood of DC, Inc.*, 408 S.W.3d at 653.

*Amount of Attorney's Fees Awarded*

Top Cat next asserts Alliance failed to conclusively establish the attorney's fees awarded by the trial court were reasonable and necessary. Top Cat specifically argues the summary judgment evidence is inconsistent on the amount of fees incurred and the award includes nontaxable costs, including testifying expert witness fees, consulting expert fees, photocopying charges, and travel and lunch expenses.

In his declaration, Broyles, Alliance's attorney, stated Alliance hired him to pursue the claim against Top Cat and agreed to pay a "reasonable fee based on a lodestar formula." He described Top Cat as a "particularly uncooperative defendant" and stated Top Cat's counterclaims, third-party claims, and affirmative defenses had "added substantial complexity to this case." "As a result," Broyles spent approximately 100 hours performing "necessary and reasonable activities" in connection with the case. Broyles's customary rate was $425 an hour and, in his opinion, this hourly rate was reasonable. Broyles then opined that $70,000 was "a reasonable and necessary attorneys' fees for handling this type of case" through summary judgment and $25,000 was a reasonable and necessary fee for handing an appeal by Top Cat to this Court.

Attached to Broyles's declaration were itemized fee statements for Broyles's services as well as a summary chart indicating Alliance had incurred $40,115.50 in attorney's fees and $20,781.83 for expenses. The chart specifically listed $16,000 for expert witness fees as an

–11–

expense. Further, a review of Broyles's fee statements indicates other expenses listed on the chart included consulting expert fees, photocopying charges, and travel and lunch expenses.

Attorney's fees may be awarded on a summary judgment only if the evidence is conclusive. *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, No. 14-17-00748-CV, 2018 WL 6378520, at \*17 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet. h.). The affidavit of an attorney "setting forth the attorney's qualifications, opinion regarding reasonable attorney's fees, and the basis for the opinion 'will be sufficient to support summary judgment, if uncontroverted.'" *Microlaser Therapy Corp. v. White*, No. 05-17-00761-CV, 2018 WL 6845242, at \*6 (Tex. App.—Dallas Nov. 16, 2018, no pet. h.) (mem. op.) (quoting *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied)); *see also Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 64 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (concluding attorney's affidavit is "expert testimony that will support an award of attorney's fees in a summary judgment proceeding"). Testimony from a party's attorney about the party's attorney's fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *Blockbuster, Inc. v. C-Span Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex. App.—Dallas 2008, pet. granted, judgm't vacated w.r.m.) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam)); *see also* TEX. R. CIV. P. 166a(c) (summary judgment may be based on uncontroverted testimony of expert witness "if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted").

Here, Broyles's declaration is not clear, positive, direct, and free from contraction. The summary chart attached to Broyles's declaration indicates Alliance incurred $40,115.50 in attorney's fees. However, in his declaration, Broyles states he spent approximately 100 hours on the case at a rate of $425 per hour, which results in attorney's fees of $42,500. Broyles then

opined, with no explanation for the increased amount, that $70,000 was a reasonable and necessary fee for his services through summary judgment. Finally, based on the summary chart, fee statements, and the amount awarded, there is at least an issue of fact regarding whether the attorney's fee award included costs, such as expert witness fees, copy costs, and travel expenses, which are not generally recoverable. *See Transcon. Realty Inv'rs Inc. v. Orix Capital Mkts. L.L.C.*, No. 05-14-00588-CV, 2015 WL 3751392, at *10 (Tex. App.—Dallas June 16, 2015, pet. denied) (mem. op.) (expenses including meals, reproduction costs, and travel expenses are not recoverable as costs); *Messier v. Messier*, 458 S.W.3d 155, 168 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (expert witness fee is incidental expense in preparation for trial not recoverable as costs).

We conclude Alliance failed to conclusively establish it was entitled to recover the amount of attorney's fees awarded by the trial court. Accordingly, we resolve Top Cat's second issue in its favor.

**Conclusion**

We reverse the portions of the trial court's summary judgment awarding Alliance (1) $198,739.63 in pre-judgment contractual interest and post-judgment interest on actual damages at the contractual rate of eighteen percent annum and (2) attorney's fees. We remand those issues to the trial court for further proceedings consistent with this opinion. *See Ventling v. Johnson*, 466 S.W.3d 143, 152, 156–57 (Tex. 2015) (reversing portions of judgment regarding post-judgment interest and appellate attorney's fees and remanding those issues to trial court). In all other respects, we affirm the trial court's judgment.

/Ken Molberg/

180175F.P05
KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TOP CAT READY MIX, LLC, Appellant

No. 05-18-00175-CV     V.

ALLIANCE TRUCKING, L.P., Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas,
Trial Court Cause No. DC-15-07419.
Opinion delivered by Justice Molberg, Justices Myers and Osborne participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** those portions of the trial court's judgment awarding Alliance Trucking, L.P. $198,739.63 in pre-judgment contractual interest and post-judgment interest on actual damages at the contractual rate of eighteen percent per annum and attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

      It is **ORDERED** that appellant Top Cat Ready Mix, LLC recover its costs of this appeal from appellee Alliance Trucking L.P.

Judgment entered this 22nd day of January, 2019.