Justice Blacklock delivered the opinion of the Court.
In this commercial dispute, the trial court granted partial summary judgment based on the so-called "sham affidavit rule." Under the rule, if a party submits an affidavit that conflicts with the affiant's prior sworn testimony and does not provide a sufficient explanation for the conflict, a trial court may disregard the affidavit when deciding whether the party has raised a genuine fact issue to avoid summary judgment. Most Texas courts of appeals have recognized the sham affidavit rule as a legitimate component of a trial judge's authority under Rule 166a to grant summary judgment when no genuine issue as to any material fact exists. The rule has long been applied throughout the federal court system under Rule 56, which contains language nearly identical to Rule 166a. We agree with the majority view that a trial court's authority to distinguish between genuine and non-genuine fact issues includes the authority to apply the sham affidavit rule when confronted with evidence that appears to be a sham designed to avoid summary judgment. We affirm the court of appeals' judgment in part, reverse in part, and remand to the court of appeals for further proceedings.
I. Background
Albert Lujan purchased Texas Wholesale Flower Company in 2005. The newly purchased company included aging flower delivery trucks, so Lujan purchased five new CF600 trucks manufactured by Navistar, Inc. Lujan testified in his deposition that in June 2006 he incorporated the business as Texas Wholesale Flower Co., Inc. (the Corporation). Later that year, Lujan transferred assets of his business to the Corporation in exchange for 100% of the Corporation's stock, pursuant to section 351 of the Internal Revenue Code. 26 U.S.C. § 351. He was the sole shareholder and was "in control of the corporation." See ion index="1" url="https://cite.case.law/citations/?q=26%20U.S.C.%20%C2%A7%20351">id. (permitting tax-free exchange if "property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately *83 after the exchange such person or persons are in control ... of the corporation"). He also testified that after forming the Corporation he filed corporate tax returns for the Corporation.
The document reflecting the section 351 transfer indicates that Lujan transferred the five CF600 trucks to the Corporation. The Corporation's income tax returns from 2006 and 2007 list the five trucks as corporate assets and indicate that the Corporation had sales of over $4 million during that time. Lujan testified at his deposition, however, that he did not transfer ownership of the trucks to the Corporation. In 2008, the Texas Secretary of State declared the Corporation's certificate forfeited due to unpaid franchise taxes.
In 2009, Lujan sued Navistar over his dissatisfaction with the trucks, alleging breach of express and implied warranties. He claimed that the trucks had recurring mechanical problems that caused disruptions in flower deliveries and the loss of perishable products and customers. He also claimed that the trucks were unsuitable for his business despite the truck salesman's representation that they would be a good fit. Lujan sued in his individual capacity and claimed individual ownership of the vehicles.
Whether Lujan or the Corporation owned the disputed trucks eventually became a contested issue. After four years of litigation, the Corporation intervened as a plaintiff, incorporating Lujan's pleadings and adding almost $15 million to the claimed damages. Lujan's attorney also represented the Corporation. Navistar moved to strike the intervention as untimely. In response to Navistar's motion to strike, the Corporation stated equivocally that "[Lujan] made an IRS Section 351 transfer ... [of] all of the assets and liabilities of Texas Wholesale Flower Co. to Texas Wholesale Flower Co., Inc." but that "legal title" to the trucks was not transferred to the Corporation. The Corporation attached a copy of the section 351 transfer, which included the trucks, to its response to Navistar's motion to strike. At the hearing on the motion, the Corporation's attorney, who also represented Lujan, contradicted the Corporation's previous statement regarding the transfer of the vehicles. He claimed that the section 351 election transferred all the assets "lock, stock and barrel" to the Corporation, including the trucks-"absolutely everything [was] transferred over." During this hearing, the attorney did not distinguish between statements he made on behalf of the Corporation as opposed to Lujan. The trial court struck the Corporation's intervention as untimely.
Two months later, Navistar filed a motion for partial summary judgment against Lujan. Navistar argued that Lujan in his individual capacity did not have standing to assert claims for injury arising from the trucks that occurred after June 12, 2006, the date on which Lujan allegedly transferred ownership of the trucks to the Corporation. In his opposition to summary judgment, Lujan asserted that he "did not transfer his assets and liabilities to a corporation at any time." He supported this assertion with a sworn affidavit that stated he did not transfer ownership of the trucks to the Corporation and that the Corporation had no assets or liabilities and "never conducted business."
At the summary judgment hearing, the trial court pointed out that while Lujan's affidavit denied that the Corporation conducted any business or possessed any assets and liabilities, Lujan's attorney conceded that the Corporation filed tax returns and had assets and liabilities. The attorney admitted that those portions of the affidavit were false. He stated that when he prepared the affidavit *84 his client "didn't recall" and "[m]isunderstood the true facts." He admitted that the Corporation had liabilities and filed tax returns. But Lujan's attorney stated that other than these falsehoods, "everything in the affidavit is true." The court was not satisfied with that explanation: "Other than where it's not true, it's true right? ... This just goes back to my point counselor. I expect everything in here to be true.... I would have a little better time of this if it was a thoughtful affidavit that tried to explain" the false statements, but instead it appeared that "either you're not paying attention to what the facts of the case are, or you're just saying whatever is convenient at the time." The court expressed an interest in striking Lujan's affidavit as a sham and requested briefing on that issue. Navistar's ensuing briefing identified deposition testimony wherein Lujan admitted he incorporated the business in 2006 and filed corporate tax returns for the business in 2006 and 2007. The tax returns include the trucks as assets of the Corporation.
The trial court struck the affidavit as a sham and granted partial summary judgment. That same day, the trial court also granted summary judgment on a separate issue regarding the merits of Lujan's claims. Lujan timely appealed both rulings. A divided panel of the court of appeals affirmed and "adopt[ed] the sham affidavit doctrine," which had not previously been explicitly recognized by the Fourteenth Court of Appeals. Lujan v. Navistar, Inc. , 503 S.W.3d 424, 434 (Tex. App.-Houston [14th Dist.] 2016, pet. granted). The court of appeals identified several reasons supporting the trial court's conclusion that Lujan's affidavit was a sham, including Lujan's deposition testimony regarding the incorporation, his attorney's statements in the hearing on the Corporation's intervention, the section 351 transfer, and the tax returns and banking documents in the record. Id. at 436-38. The court of appeals declined to reach Lujan's appeal of the summary judgment granted on the merits of his claims. Id. at 439. The dissent argued that the sham affidavit rule conflicts with Texas law and does not apply to Lujan's affidavit. Id. at 439-50. Lujan petitioned to this Court, and we granted the petition.
II. Analysis
A. Standard of Review
We review the trial court's grant of summary judgment de novo. Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 215 (Tex. 2003). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Provident Life , 128 S.W.3d at 215-16. If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. Centeq Realty, Inc. v. Siegler , 899 S.W.2d 195, 197 (Tex. 1995). In reviewing the grant of summary judgment, we must credit evidence favoring the non-movant, indulging every reasonable inference and resolving all doubts in his or her favor. Randall's Food Markets, Inc. v. Johnson , 891 S.W.2d 640, 644 (Tex. 1995).
Although we generally review summary judgments de novo, a trial court's refusal to consider evidence under the sham affidavit rule should be reversed only if it was an abuse of discretion. See, e.g. , Corner v. County of Eastland , No. 11-10-00157-CV, 2012 WL 2045949, at *3 (Tex. App.-Eastland June 7, 2012, pet. denied) (mem. op.) ("A trial court's decision to strike an affidavit under the sham affidavit doctrine is reviewed under an abuse of *85 discretion standard."). This standard of review reflects the deference traditionally afforded a trial court's decision to exclude or admit summary judgment evidence. See Starwood Mgmt., LLC v. Swaim , 530 S.W.3d 673, 678 (Tex. 2017) ("We review the rendition of summary judgments de novo. But we review a trial court's decision to exclude evidence for an abuse of discretion.") (citations omitted). Federal courts applying the sham affidavit rule have likewise employed an abuse of discretion standard of review. See, e.g. , Daubert v. NRA Grp., LLC , 861 F.3d 382, 389 (3d Cir. 2017) ("[W]e review a district court's decision to exclude materials under the sham-affidavit doctrine for abuse of discretion."); France v. Lucas , 836 F.3d 612, 622 (6th Cir. 2016) ("The district court declined to consider the affidavit by applying the 'sham affidavit' doctrine. We review that decision for an abuse of discretion.") (citations omitted).
B. The Sham Affidavit Rule
The sham affidavit rule originated in the federal courts nearly fifty years ago. See Perma Research & Dev. Co. v. Singer Co. , 410 F.2d 572 (2d Cir. 1969) ; see also Judge Randy Wilson, The Sham Affidavit Doctrine in Texas , 66 TEX. B.J. 962, 964 (2003) ("The sham affidavit doctrine is usually traced to the Second Circuit opinion in Perma. "). Since that time, federal appellate courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp. , 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).
In federal practice, the sham affidavit rule provides that "the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." Albertson v. T.J. Stevenson & Co. , 749 F.2d 223, 228 (5th Cir. 1984). Such conflicting affidavits "indicate[ ] only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Jiminez v. All Am. Rathskeller, Inc. , 503 F.3d 247, 253 (3d Cir. 2007). The basis for the rule is that allowing manufactured affidavits to defeat summary judgment would thwart the very object of summary judgment, which "is to separate real and genuine issues from those that are formal or pretended ...." Radobenko v. Automated Equip. Corp. , 520 F.2d 540, 544 (9th Cir. 1975). Rewarding a party who seeks to defeat summary judgment by "contradicting his own prior testimony ... would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Perma Research , 410 F.2d at 578.
The sham affidavit rule does not authorize trial courts to strike every affidavit that contradicts the affiant's prior sworn testimony. "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses ...." Tippens v. Celotex Corp. , 805 F.2d 949, 953 (11th Cir. 1986). Sometimes a contradictory affidavit is warranted. But an explanation for the contradiction is also warranted. For example, courts have acknowledged that newly discovered evidence may justify a contradictory affidavit. See Franks v. Nimmo , 796 F.2d 1230, 1237 (10th Cir. 1986). Other times, an affiant "may have been confused about what was being asked" during a deposition and *86 therefore an affidavit, though facially inconsistent, should be considered. Pyramid Sec. Ltd. v. IB Resolution, Inc. , 924 F.2d 1114, 1123 (D.C. Cir. 1991).
Most Texas courts of appeals have followed the federal courts by recognizing the sham affidavit rule as a valid application of a trial court's authority to distinguish genuine fact issues from non-genuine fact issues under Rule 166a.[1] We agree. Like the federal rules of civil procedure, the Texas rules provide for summary judgment when no "genuine" fact issue exists. FED. R. CIV. P. 56(a) ; TEX. R. CIV. P. 166a(c). The operative clauses in federal Rule 56(a) and Texas Rule 166a(c) are materially indistinguishable. Accordingly, the overwhelming federal precedent applying the sham affidavit rule is persuasive, though not controlling, in our interpretation of Rule 166a(c). Compare FED. R. CIV. P 56(a) ("no genuine dispute as to any material fact"), with TEX. R. CIV. P. 166a(c) ("no genuine issue as to any material fact"). In both the federal rule and its Texas counterpart, the key word is "genuine." Not just any proffered fact issue defeats summary judgment. While a trial court must not weigh evidence, Gulbenkian v. Penn , 151 Tex. 412, 252 S.W.2d 929, 931 (1952), the rules of procedure require the court to determine whether a proffered fact issue is "genuine," which means "authentic or real." Genuine , BLACK'S LAW DICTIONARY (10th ed. 2014). A "sham" is, by definition, "not genuine." Sham , WEBSTER'S NEW INT'L DICTIONARY (3rd ed. 1961). The sham affidavit rule merely recognizes the authority of a trial court charged with weeding out non-genuine fact issues to require litigants to explain conflicting testimony that appears to be a sham designed to avoid summary judgment.
The abundant federal precedent recognizing the sham affidavit rule consistently grounds its application in the procedural rule's use of the word "genuine." In Perma Research , for example, the Second Circuit concluded that inconsistent statements by the same witness did not create a genuine fact issue. "If there is any dispute as to the material facts, it is only because of inconsistent statements made by Perrino the deponent and Perrino the affiant." 410 F.2d at 578. This led to the conclusion that "neither the Perrino deposition nor the Perrino affidavit raises any issue which we can call genuine." Id. Similarly, in Radobenko , the Ninth Circuit conceded that the issues raised in Radobenko's affidavit were "both material and relevant," but the court "reject[ed] [Radobenko's] efforts to characterize them as genuine issues of fact." 520 F.2d at 544. "[W]e are convinced that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, they are sham issues which should not *87 subject the defendants to the burden of a trial." Id.
Federal courts also emphasize the genuineness inquiry even when the sham affidavit rule does not apply. In Kennett-Murray Corp. v. Bone , the Fifth Circuit framed the question on summary judgment as follows: "In order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact." 622 F.2d 887, 892 (5th Cir. 1980). Where it was undisputed that that the non-movant alleged a material fact dispute, "[t]he central dispute [became] whether a genuine dispute exists." Id. at 893 (emphasis added). The court cited both Perma Research and Radobenko with approval but also noted that "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." Id. at 893-94. The court concluded that the inconsistent affidavit in that case explained rather than contradicted the prior testimony. The inconsistency sprang from the affiant's confusion at his deposition, and the affidavit was an attempt to clarify the confusing testimony rather than manufacture a sham. Id. at 894-95. The court of appeals reversed the grant of summary judgment and held that the disputed "affidavit served to create a genuine issue which ... preclude[s] summary judgment." Id. at 894.
In Camfield Tires, Inc. v. Michelin Tire Corp. , the Eighth Circuit explained that although Kennett-Murray reached a different outcome than Perma Research and Radobenko , the reasoning in all three cases derived from federal Rule 56's use of the word "genuine." 719 F.2d 1361, 1364 (8th Cir. 1983). Perma Research and Radobenko , which had already been followed by a majority of circuit courts, focused on the power of trial courts to weed out sham issues of fact, while Kennett-Murray "described certain narrow circumstances under which a party's contradictory affidavit can raise a legitimate factual issue ...." Id. As these decisions illustrate, the sham affidavit rule exists in service of the procedural rule's textual requirement that trial courts allow only genuine fact issues to survive summary judgment.
Like Rule 56 of the federal rules, Rule 166a obligates Texas trial courts to distinguish genuine fact issues, which must proceed toward trial, from non-genuine fact issues, which should not survive summary judgment. Application of the sham affidavit rule is merely one way in which trial courts have gone about discharging that obligation. We affirm this approach today. Under Rule 166a(c), a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict. We emphasize that this rule does not contravene the long-standing principle that the trial court is "not to weigh the evidence or determine its credibility, and thus try the case on the affidavits." Gulbenkian , 252 S.W.2d at 931. Rather, the sham affidavit rule is a tool that may be used to distinguish genuine fact issues from non-genuine fact issues in service of the "underlying purpose of Rule 166a [to] eliminat[e] ... patently unmeritorious claims or untenable defenses ...." Id.
Texas courts of appeals recognizing the sham affidavit rule have generally relied on the federal examples. Two court of appeals' decisions helpfully illustrate the contours and limitations of the rule. In Pando v. Southwest Convenience Stores, LLC , the plaintiff sued the convenience store that sold him alcohol on the night of a fatal car accident.
*88 242 S.W.3d 76 (Tex. App.-Eastland 2007, no pet.). The store moved for summary judgment based on the plaintiff's deposition testimony that he did not know whether he exhibited signs of intoxication on the night in question. The plaintiff opposed summary judgment with an affidavit stating that he did exhibit signs of intoxication. Id. at 78-79. The plaintiff did not explain the contradiction. Id. at 79-80. The trial court granted summary judgment. The court of appeals affirmed, reasoning that the trial court was justified in concluding that the fact question allegedly created by the affidavit was not genuine but "only a sham issue." Id. at 80. The court stated the sham affidavit rule as follows: "[W]hen (1) the affidavit is executed after the deposition and (2) there is a clear contradiction on (3) a material point (4) without explanation, the 'sham affidavit' doctrine may be applied ...." Id. at 79. We agree that a trial court does not abuse its discretion by concluding that no genuine issue of fact exists under such circumstances. We caution, however, that whether to apply the sham affidavit rule to disregard sworn testimony is a case-specific inquiry not easily amenable to the rote application of multi-part tests. We agree with the San Antonio court of appeals that a court asked to disregard a conflicting affidavit must "examine the nature and extent of the differences in the facts asserted in the documents to determine what effect a conflict should be given in a particular case." Cantu v. Peacher , 53 S.W.3d 5, 7 (Tex. App.-San Antonio 2001, pet. denied). Examination of the nature and extent of the contradiction is essential. "Most differences between a witness's affidavit and deposition are more a matter of degree and details than direct contradiction. This reflects human inaccuracy more than fraud." Id. at 10. "If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment .... If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation," then the sham affidavit rule applies. Id. The sham affidavit rule is not a free-standing rule of procedure to be mechanically applied in the same way to every case. It is a flexible concept that flows from the text of Rule 166a(c) and aids courts grappling with the ultimate case-specific inquiry on summary judgment: Are the proffered fact issues genuine or not?
Lujan argues that the sham affidavit rule is a creature of federal law that is unavailable in Texas court. As we have explained, however, the relevant portion of the summary judgment standard in Texas Rule 166a is materially identical to federal Rule 56. In both rules, the touchstone for survival of summary judgment is whether proffered fact issues are "genuine." Compare Radobenko , 520 F.2d at 544 ("The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended ...."), with In re Price's Estate , 375 S.W.2d 900, 904 (Tex. 1964) ("The purpose of [ Rule 166a ] is to eliminate patently unmeritorious claims, or untenable defenses and to avoid delays of trial where there is no genuine issue of fact.").
In other respects, Lujan is correct that Texas's summary judgment rule differs from its federal counterpart. Compare FED. R. CIV. P. 56, with TEX. R. CIV. P. 166a. For example, Lujan emphasizes that the federal rules regarding bad-faith affidavits include a residual clause allowing the trial court to order "other appropriate sanctions," which can include striking the affidavit. FED. R. CIV. P. 56(h). The corresponding Texas rule does not contain that residual clause. TEX. R. CIV. P. 166a(h). It states only two consequences for bad-faith *89 affidavits: sanctions and contempt. Id. (stating that if a party files a bad-faith affidavit, the trial court may "order the party ... to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt"). Lujan contends that the Texas rule's enumeration of these two consequences deprives trial courts of authority to impose other, unenumerated consequences for bad-faith affidavits.
We are not persuaded that Rule 166a(h) precludes application of the sham affidavit rule. To begin with, application of the sham affidavit rule does not require a finding of bad faith. The rule arises not from Rule 166a(h) but from Rule 166a(c), which contains the well-known standard that material fact issues must be "genuine" in order to survive summary judgment. A court granting summary judgment after applying the sham affidavit rule is not imposing penalties for bad faith. It is applying the traditional summary judgment standard. That standard does not change simply because Rule 166a(h)'s provisions regarding bad-faith affidavits may also apply. Properly understood, the two rules do not conflict. One governs when summary judgment should be granted or denied. The other governs sanctions for bad-faith affidavits. Lujan's position is that Rule 166a(h) both empowers courts to take certain actions in response to bad-faith affidavits and disempowers courts to take other actions that would otherwise be within their authority. But nothing in the text of Rule 166a(h) purports to make the rule's remedies exclusive or to divest trial courts of authority granted elsewhere in the rules. Moreover, if we agreed with Lujan that no consequences can flow from a bad-faith affidavit except those explicitly stated in Rule 166a(h), the result would be that even the most flagrantly bad-faith affidavits could be used to survive summary judgment. This would rob the word "genuine" in Rule 166a(c) of much of its meaning and require denial of summary judgment any time a litigant has the temerity to submit a self-serving affidavit that conflicts with his prior testimony.
Lujan also points to this Court's prior decisions, which he claims foreclose application of the sham affidavit rule. We disagree, as did the many Texas courts of appeals that have already recognized the rule. In Gaines v. Hamman , we held that an affidavit should not be struck because it conflicts with the affiant's prior deposition testimony. 163 Tex. 618, 358 S.W.2d 557, 561-62 (1962). The plaintiff testified one way in his deposition but then filed a contradictory affidavit in response to a motion for summary judgment. Id. at 562. This Court held that if "conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented." Id. Gaines was decided before the sham affidavit rule developed in both federal court and Texas court, but we need not overturn it in order to recognize the rule. It may sometimes be the case, as in Gaines , that two pieces of testimony from the same witness raise legitimate conflicting inferences sufficient to defeat summary judgment. The sham affidavit rule only provides that where the circumstances point to the likelihood of a sham rather than legitimate conflicting inferences, the trial court may insist on a sufficient explanation and may grant summary judgment if none is forthcoming.
Our later decision in Randall v. Dallas Power & Light Co. involved similar circumstances. 752 S.W.2d 4 (Tex. 1988). Randall stated in an affidavit that an agent of the defendant said certain things, but then stated in his deposition that he could not remember any of it. Id. at 4-5. This *90 Court reversed summary judgment because "[t]he court of appeals completely ignore[d] the well-established rule that a deposition does not have a controlling effect over an affidavit ...." Id. Like Gaines , Randall did not consider the sham affidavit rule. By recognizing the rule today, we do not hold in conflict with Randall that depositions control over affidavits. Instead, we hold that when one contradicts the other and appears to the trial court to be a sham designed to avoid summary judgment, the trial court may require a sufficient explanation and may grant summary judgment in the absence of one.
C. Application
We turn now to the circumstances of this case. As explained above, "[w]e review the rendition of summary judgments de novo. But we review a trial court's decision to exclude evidence for an abuse of discretion." Starwood , 530 S.W.3d at 678. We therefore apply the abuse of discretion standard to the trial court's decision to disregard Lujan's affidavit as a sham.
After disregarding Lujan's affidavit, the trial court granted partial summary judgment against Lujan because defects in the trucks injured the Corporation rather than Lujan in his personal capacity. Lujan argues that, even if the sham affidavit rule is viable, it does not apply to his affidavit. He points out that the statement in his affidavit that he did not transfer ownership of the trucks to the Corporation accords with his deposition testimony. This is true. Nevertheless, we find that under the particular circumstances of this case, the trial court did not abuse its discretion by disregarding Lujan's affidavit as a sham.
Although Lujan's affidavit and deposition testimony agree on the ownership of the trucks, Lujan fails to recognize that his deposition contradicts his affidavit on other material points, including the Corporation's activities. In his affidavit, Lujan made broad statements that "[a]t all times I did business as Texas Wholesale Flower Company.... At no time did a corporation conduct business as Texas Wholesale Flower Company.... [The Corporation] never conducted business." These statements contradict his deposition testimony that he incorporated the company in 2006 and filed tax returns as a corporation.
Q. I thought you filed corporate tax returns in '06 and '07?
A. Yeah....
Q. Let me back up, though. But did you incorporate the business-
A. At some point.
Q. -in '07?
A. At some point, yes....
Q. ... And you filed as a corporation?
A. Yes.
Other sworn evidence also contradicts Lujan's affidavit, including the section 351 transfer documents and the Corporation's tax returns. Lujan stated in his affidavit that he never transferred ownership of the trucks to the corporation. However, the section 351 election states that he did transfer ownership. The Corporation's tax returns, which Lujan admitted in his deposition were filed, also included the trucks as corporate assets. These documents were "made under the penalties of perjury," 26 U.S.C. § 6065, and they contradict Lujan's affidavit. Lujan now argues that because the copies in the record of the section 351 election and the tax returns are unsigned, they should not be considered sworn statements under the sham affidavit rule. He did not make this argument to the trial court when asked about the discrepancy between the affidavit and the corporate tax returns. And he does not contend the tax documents are incorrect or not genuine. Further, in his deposition and before the trial court, Lujan admitted he filed the corporate tax returns that show *91 the trucks as corporate assets. Under these circumstances, the district court did not abuse its discretion by relying on the tax documents as the equivalent of sworn statements for purposes of the sham affidavit rule.
In addition to the facial inconsistencies between the affidavit and Lujan's other sworn evidence, the particular circumstances of this case lend considerable support to the trial court's decision to disregard the affidavit as a sham. To begin with, Lujan's attorney openly admitted to the trial court that the affidavit was false. When the trial court pointed to the contradictions in Lujan's evidence, his attorney's only explanation for the false affidavit was that Lujan either did not recall or misunderstood the relevant facts. The trial court was not persuaded. The court stated, "either you're not paying attention to what the facts of the case are, or you're just saying whatever is convenient at the time."
The trial court also pointed to conflicting statements by Lujan's attorney during the hearing on the motion to intervene. At that hearing, the attorney stated that Lujan had transferred "absolutely everything"-"lock, stock and barrel"-to the Corporation in 2006. Then during the hearing on summary judgment, the attorney tried to limit the effect of his prior statement when confronted with the contradiction between his statement and his client's affidavit. He claimed that the statement was made on behalf of the Corporation and not Lujan. However, the record reflects that at the hearing on the intervention, the attorney appeared on behalf of plaintiff, Albert Lujan, and did not attempt to distinguish his statements on behalf of the Corporation from his statements on behalf of Lujan. Further, Lujan was the sole shareholder of the Corporation. His artful attempt to disown the Corporation's statements rang hollow to the trial court and the court of appeals, and we cannot disagree. When Lujan's attorney characterized the whole mess as a misunderstanding, the trial court justifiably responded:
This isn't simply a situation where you said, "I misunderstood," and then you come back and then you file an affidavit that parses out specifically what the issues are as you've stated to the court right here in oral argument. Instead, there's an affidavit that says, "Look, you know, there's just this corporation that existed for all intents and purposes on paper and I never did anything with it." But that's not true.
It should be noted that the conflict between Lujan's affidavit and his attorney's statements does not alone dictate the outcome of this case. The sham affidavit rule looks to contradictions in sworn testimony, not in attorney statements. Such conflicts in sworn testimony exist in this case. What also exists in this case are other circumstances supporting the trial court's decision to disregard Lujan's affidavit as a sham. These circumstances include the admitted falsity of the affidavit and the inconsistent statements of Lujan's attorney, both of which buttress the trial court's conclusion that the late-filed and contradictory affidavit did not raise genuine fact issues sufficient to survive summary judgment. Under these circumstances, the trial court did not abuse its discretion by disregarding Lujan's affidavit.
III. Conclusion
We conclude that the sham affidavit rule is a valid component of a trial court's authority under Rule 166a to distinguish genuine fact issues from non-genuine fact issues. In the case before us, the trial court did not abuse its discretion by concluding that the affidavit in question did not raise a genuine fact issue sufficient to survive summary judgment. Therefore, we affirm the court of appeals' decision as to the partial summary judgment grant.
*92 Although the court of appeals found that the grant of partial summary judgment disposed of the entire case, Lujan contends that his claims may remain partly unresolved. Navistar's motion for partial summary judgment applied only to injuries sustained after the incorporation and transfer of ownership on June 12, 2006. The record is not clear on whether the court of appeals' decision affirming the grant of partial summary judgment disposes of claims for damages that arose prior to June 12, 2006. As noted above, the trial court granted a second summary judgment motion that disposed of the entire case. The merits of the second motion were briefed to the court of appeals but were not reached by that court. The merits of the second motion are not before us. Therefore, we remand to the court of appeals to consider whether any of Lujan's claims remain unresolved. The judgment of the court of appeals is affirmed in part and reversed in part, and the case is remanded to the court of appeals.

Eight courts of appeals have recognized the rule. See Fred Loya Ins. Agency, Inc. v. Cohen , 446 S.W.3d 913, 927 (Tex. App.-El Paso 2014, pet. denied) ; Pando v. Sw. Convenience Stores, LLC , 242 S.W.3d 76, 79 (Tex. App.-Eastland 2007, no pet.) ; Trostle v. Trostle , 77 S.W.3d 908, 915 (Tex. App.-Amarillo 2002, no pet.) ; Eslon Thermoplastics v. Dynamic Sys., Inc. , 49 S.W.3d 891, 901 (Tex. App.-Austin 2001, no pet.) ; Burkett v. Welborn , 42 S.W.3d 282, 286 (Tex. App.-Texarkana 2001, no pet.) ; Cantu v. Peacher , 53 S.W.3d 5, 10-11 (Tex. App.-San Antonio 2001, pet. denied) ; Farroux v. Denny's Rests., Inc. , 962 S.W.2d 108, 111 (Tex. App.-Houston [1st Dist.] 1997, no pet.) ; Lujan v. Navistar, Inc. , 503 S.W.3d 424, 439 (Tex. App.-Houston [14th Dist.] 2016, pet. granted). Four courts of appeals have not. See Pierce v. Wash. Mut. Bank , 226 S.W.3d 711, 717-18 (Tex. App.-Tyler 2007, pet. denied) ; Del Mar Coll. Dist. v. Vela , 218 S.W.3d 856, 862 (Tex. App.-Corpus Christi 2007, no pet.) ; Davis v. City of Grapevine , 188 S.W.3d 748, 756 (Tex. App.-Fort Worth 2006, pet. denied) ; Thompson v. City of Corsicana Housing Auth. , 57 S.W.3d 547, 557 (Tex. App.-Waco 2001, no pet.).