Opinion issued July 9, 2019



In The

# Court of Appeals

For The

# First District of Texas

——————————

## NO. 01-18-01069-CV

——————————

**CITY OF HOUSTON, Appellant**

**V.**

**CASSANDRA GARZA, Appellee**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2018-15552

## MEMORANDUM OPINION

This is an interlocutory appeal of the trial court's denial of the City of Houston's traditional motion for summary judgment, in which it argued that it was immune from suit under the Texas Tort Claims Act. On appeal, the City argues

that the trial court erred by denying its motion because appellee Cassandra Garza's summary judgment affidavit was a sham that should have been disregarded.

Because the City did not conclusively prove its entitlement to summary judgment, we affirm the order of the trial court.

## Background

City of Houston Police Officer J. Turretine and his partner stopped Cassandra Garza for speeding at 5:14 a.m. on March 9, 2016. She was arrested for outstanding traffic warrants and taken to the City's Southeast Jail. At the jail, Officer Turretine's partner found Garza in possession of clear plastic bags containing less than a gram of cocaine residue. Based on that information, Officer Turretine contacted a Harris County assistant district attorney, "who accepted charges of possession of cocaine less than one gram." Officer Turretine had no further contact with Garza.

Garza alleged that she was injured later that day when a vehicle taking her from the City jail to the Harris County jail collided with another vehicle. She sued both the City and Harris County, stating that it was "undetermined at this time whether the Plaintiff was in the custody of the City of Houston or Harris County, Texas at the time of the accident."

The City filed a traditional motion for summary judgment in which it argued that immunity precluded Garza's suit as a matter of law. The City contended that

2

its evidence—two affidavits and discovery responses—conclusively proved that Garza's alleged injuries did not arise from the City's use of a motor driven vehicle. The City attached affidavits from Officer Turretine, who arrested Garza, and Officer R. Hall, who worked later that day. Officer Turretine stated that he and his partner were uniformed and in a marked patrol car when they met Garza. He averred that they were not involved in a motor vehicle collision while transporting her.

Both Officers Turretine and Hall denied having taken Garza to the Harris County jail, although Officer Hall said that it was within his job responsibilities to transport inmates. Officer Hall averred that he had provided inmate transportation for 14 years and never had an accident. On March 9, 2016, he was assigned to the evening shift, which began at 2:00 p.m. It was his usual practice to open the back doors of the transport vehicle upon arrival at the Harris County jail, he "never observed any inmates on the floor of the van after opening the doors," and he "never received a report from an inmate that they were injured during the drive."

The City's final piece of summary judgment evidence was Garza's sworn interrogatories. In response to interrogatories, Garza stated that:

- She was a passenger in a vehicle owned and operated by either the City of Houston or Harris County.

- The vehicle in which she was riding rear-ended another vehicle.

3

- She was seated in the rear of the vehicle, and she was being transported to jail.

- Immediately after the accident, she remained seated in the vehicle.

- She did not know of any efforts made by the driver to avoid the collision, nor did she know what the driver did immediately after the collision.

- She suffered pain to her body generally, including her head, neck, and back. She did not have this pain immediately prior to the collision.

- She did not recall any subsequent vehicular collision that affected the injuries she allegedly sustained.

In other, separate interrogatories, she was asked to describe the vehicle with regard to specific characteristics,[1] to identify each person who was in the vehicle at the time of the alleged collision,[2] to describe the driver including any uniform worn,[3] and to describe any other vehicle involved in the collision. She responded that she could not or did not recall the requested information.

---

[1] Interrogatory No. 3. Describe the vehicle You were in at the time of the Accident, including the make, model, exterior color, the color of exterior lettering, if any, the substance of any lettering on the vehicle, interior color, position of the emergency lights and any other detail You can recall.

[2] Interrogatory No. 5. Identify each person who was in the vehicle in which You were a passenger at the time of the Accident, including their location in the vehicle and whether they were restrained by a seat belt or other safety device.

[3] Interrogatory No. 6. If a peace officer was driving the vehicle in which You were a passenger at the time of the Accident, describe him or her, including the uniform he or she was wearing, if any.

4

Garza responded with her own affidavit and an affidavit from Harris County Sheriff's Deputy C. Meaux. In her affidavit, Garza averred that she was arrested and taken to the City's Southeast Jail on March 9, 2016. She stated: "Later that same day, I was loaded into a van, along with two other female inmates, to be transported from this jail to County Jail." She also averred that she was handcuffed to a female inmate, and another inmate on the van was pregnant. She described the van as "being light in color," although she "only saw the rear of the van." She stated that the "people who loaded [her] into the van had uniforms that were dark in color." She described metal partitions inside the van, and she stated that she was "seated on a metal bench that had no seatbelts." She recalled feeling "the jolt of a collision with another vehicle," and when she looked through a window, she saw that "the transport van had collided with the rear of another vehicle."

Deputy Meaux averred that he had worked for the Harris County Sheriff's Office for 27 years, and during that time he oversaw "all investigations involving HCSO fleet vehicles." He averred:

> . . . .
>
> 6. It is the policy of the HCSO only to use HCSO fleet vehicles to transport inmates.
>
> 7. It has never been the practice of the HCSO to transport inmates from the City of Houston Southeast Jail located at 8300 Mykawa Road, Houston, Texas 77048.

5

8.      On March 9, 2016, there were only two HCSO fleet vehicle accidents, neither HCSO fleet vehicle involved on this date are the type used to transport inmates. Neither HCSO fleet vehicle involved in an accident on this date were driven by an officer assigned to inmate transport.

9.      On March 9, 2016, a Dodge Ram 1500 driven by Deputy [G.] Bloomfield, a HCSO Investigator, was in an accident at 10:30 a.m. Deputy Bloomfield's vehicle was hit by another vehicle backing into it in a parking lot. On March 9, 2016, a Ford Taurus driven by Deputy [C.] Workman was struck at the scene of an accident by a tow truck. No other HCSO fleet vehicles were involved in accidents on this date.

The City objected that Garza's affidavit was a sham affidavit and asked the court to strike it from the summary judgment record. The City argued that Garza's affidavit included details about the transport vehicle, its other occupants, the driver, and the other vehicle involved in the alleged collision, but she had stated that she did not recall these details in her previously filed sworn interrogatory responses.

The trial court denied the City's motion and specifically overruled the City's sham affidavit objection.[4]

**Analysis**

On appeal, the City raises a single issue, arguing that the trial court erred by denying its motion for summary judgment because Garza's affidavit was a sham

---

[4]    The ruling on the sham affidavit objection preserved the City's issue for appeal. *See Scott v. Hunt*, No. 01-11-00042-CV, 2012 WL 983339, at *5 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op.) (an objection that an affidavit is a sham affidavit alleges a defect in form, which requires a ruling from the trial court to preserve the issue for appeal).

and should not have been considered. The City contends that Garza's affidavit was the only evidence that created a genuine question of material fact sufficient to preclude summary judgment. Garza joins issue with the City, arguing that her affidavit was not a sham and that together with Deputy Meaux's affidavit, there was a genuine question of material fact about whether the transport vehicle was operated by the City.

## I. The court of appeals has jurisdiction over an interlocutory order denying a motion for summary judgment in which a governmental unit asserted immunity.

A person may appeal from an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit. TEX. CIV. PRAC. & REM. CODE § 51.014(8). When a governmental unit asserts immunity in a motion for summary judgment, a court of appeals has jurisdiction to review an interlocutory order denying summary judgment. *PHI, Inc. v. Tex. Juvenile Justice Dep't*, No. 18-0099, 2019 WL 1873431, at *2 n.1 (Tex. Apr. 26, 2019); *accord Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought.").

**II.** **A traditional summary judgment movant must show its entitlement to judgment as a matter of law.**

We review a trial court's summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84; *see Maldonado v. Maldonado*, 556 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The purpose of summary judgment is to eliminate patently unmeritorious claims, not to deprive a litigant of the right to a jury trial. *E.g.*, *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979). When a party moving for traditional summary judgment fails to satisfy the initial burden of showing that it is entitled to judgment as a matter of law, the trial court must deny the motion, and the nonmovant is not required to come forward with evidence demonstrating that a genuine question of material fact exists. *See Lujan*, 555 S.W.3d at 84.

**III. Governmental immunity enjoyed by municipalities can be waived by the Legislature.**

Governmental immunity, like sovereign immunity from which it is derived, exists to protect political subdivisions, such as municipalities, from suit and liability for monetary damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). The Legislature has expressly waived immunity to the extent provided by the Texas Tort Claims Act. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. As relevant to this case, the TTCA waives immunity for personal injury caused by a wrongful act, omission, or negligence of an employee using a motor-driven vehicle in the scope of his employment, so long as the employee would be liable personally. TEX. CIV. PRAC. & REM. CODE § 101.021(1).

The City argued that it was entitled to summary judgment as a matter of law because it conclusively negated that the alleged injuries were caused by one of its employees using a motor-driven vehicle. We disagree. Having reviewed the City's summary judgment de novo, we conclude that it failed to meet its initial summary judgment burden.

The City's evidence showed that at approximately 5:14 a.m. on March 9, 2016, Officer Turretine arrested Garza and took her to the Southeast Jail. Officer Turretine's affidavit did not indicate when his shift ended, although it stated that,

9

after contacting an assistant district attorney about a small quantity of cocaine found in Garza's possession, he took no further action related to this case.

Officer Hall's affidavit showed that he transported inmates to Harris County jails from 2004 to 2018 and that he never had a vehicular accident. Officer Hall averred that on March 9, 2016, his shift began at 2:00 p.m. He further averred that on March 9, 2016, he was "the transport officer assigned to the evening shift." He did not, however, aver that inmates were only transported during the evening shift or that no inmates were transported before his shift began that day. His affidavit does not mention whether he saw Garza at any time after he arrived at work on March 9, 2016. Thus, there is a gap in the City's evidence between 5:14 a.m. and 2:00 p.m.

Garza did not allege when she was taken to the Harris County jail except to say it was "later in the day," after her arrest on March 9, 2016. Her affidavit was similarly phrased. This statement could mean that she was moved at a late time of day, such as late afternoon or evening generally. It also could mean that Garza was taken to the Harris County jail after her arrest around 5:14 a.m., but on the same day. The City's evidence does not address whether Garza was or could have been transported to the Harris County jail before Officer Hall arrived at work at 2:00 p.m. While the evidence showed that neither Officer Turretine nor Officer Hall was driving a vehicle in which Garza was a passenger when the collision

10

occurred, it did not conclusively establish that no City employee was operating the motor vehicle that Garza alleged was involved in the collision that caused her injuries. Because of the gap in the City's summary judgment evidence, it remains possible that Garza was transported to the Harris County jail by a City of Houston employee, i.e., one driving a vehicle after Garza's arrest and before 2:00 p.m. Thus, the City did not conclusively establish that its immunity was not waived under the TTCA.

Because the City did not meet the initial summary judgment burden to prove its entitlement to judgment as a matter of law, the court was obligated to deny the motion, and Garza was not required to come forward with any evidence to create a question of fact. Having properly applied the summary judgment standard of review, we do not need to address whether Garza's affidavit was a sham affidavit or whether the sham affidavit rule applies when the prior statement was a sworn response to interrogatories. *See* TEX. R. APP. P. 47.1; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining prohibition on advisory opinions).

We overrule the City's sole issue.

11

## Conclusion

We affirm the order of the trial court.

Peter Kelly
Justice

Panel consists of Justices Keyes, Kelly, and Goodman.