

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HAYDON BUILDING CORPORATION, | § | No. 08-23-00073-CV |
| Appellant, | § | Appeal from the |
| v. | § | 41st District Court |
| JACIE LYNN GREEN, | § | of El Paso County, Texas |
| Appellee. | § | Cause No. 2015DCV1968 |

## MEMORANDUM OPINION

This is an interlocutory appeal of the trial court's denial of Haydon Building Corporation's traditional motion for summary judgment. Appellee Jacie Lynn Green, the daughter of a construction worker who was killed while he worked in a construction zone of a Texas Department of Transportation (TxDOT) project, brought a wrongful death and personal injury claim alleging her father's death was proximately caused by Haydon Building's negligent implementation of a traffic control plan that governed the project. On appeal, Haydon Building contends it conclusively established its entitlement to protection from liability for Green's claims based on § 97.002 of the Texas Civil Practice and Remedies Code.[1] Because we conclude that genuine issues of material fact exist, we affirm the trial court's denial of Haydon Building's motion.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(17) (authorizing an appeal from an interlocutory order denying a contractor's motion for summary judgment based on § 97.002).

# I. FACTUAL AND PROCEDURAL BACKGROUND

Haydon Building, a general contractor, entered into a construction contract with TxDOT to construct a bridge known as the 1966 Spur Bridge (the Project). Once built, the bridge would span all east- and westbound lanes of Interstate 10 (I-10) in El Paso. As general contractor, Haydon Building also contracted with TxDOT to implement and maintain a Traffic Control Plan (the Plan) for the Project, which TxDOT had developed with an engineering firm. Haydon Building in turn subcontracted with Leedsman Construction, Inc. d/b/a Traffic Control Specialist (Leedsman Construction) to implement the Plan.[2]

To facilitate construction on the Project, the Plan provided for complete freeway closure as specified by contract terms. Accordingly, the Plan diverted traffic away from I-10 during construction. The Plan specified the placement of traffic control devices, barricades, truck mounted attenuators, and warning signs, among its other terms. Specifically, the Plan required Haydon Building or its subcontractor to "[p]rovide, install, move, replace, maintain, clean, and remove all traffic control devices as shown on the plans and as directed."

On May 11, 2014, construction coworkers James Green and Jimmy Joe Broadstreet were working an overnight shift on the 1966 Spur Bridge. On that occasion, TxDOT planned for the freeway's closure to all traffic for about a seven-mile stretch, which TxDOT considered the "work zone." To install beams on I-10, Mr. Green and Broadstreet were assembling a crane for their use throughout their shift.[3] Shortly before 2:27 a.m., Jan Nieves Delgado drove onto I-10 east, in breach of the protected work zone. Delgado crashed into one of the two cranes being assembled,

---

[2] The reporter's record, clerk's record, and parties' briefs present alternative spellings for Leedsman Construction's corporate name. We proceed with the spelling used in the challenged order and notice of appeal in the record of Leedsman Construction's appeal, in which we issue an opinion and judgment this same date. *See Leedsman Constr., Inc. v. Green*, No. 08-23-00074-CV (Tex. App.—El Paso July 31, 2024, no pet. h.).

[3] To avoid the confusion that arises from daughter and father having the same last name, we refer to Appellee as "Green" and her father as "Mr. Green."

hitting an 11,000-pound counterweight. The counterweight struck Mr. Green and Broadstreet, who were standing nearby. Mr. Green died at the scene; while Broadstreet died at a local hospital. It is undisputed that, prior to Delgado's driving onto I-10 east, he had been drinking at a local nightclub.[4]

In June 2015, Monica Broadstreet filed a lawsuit for the personal injuries and wrongful death of her husband, Jimmie Joe Broadstreet, against Delgado and the bar where he had been drinking. Soon, Jacie Lynn Green filed a plea in intervention in Broadstreet's suit. Similar to Broadstreet's, Green's petition alleged, among other claims, that Haydon Building and Leedsman Construction were negligent in failing to properly implement TxDOT's Plan, and in failing to secure I-10 East from oncoming vehicle traffic.[5] Green alleged that Haydon Building and Leedsman Construction were both responsible for closing I-10, and maintaining its closure, during the planned construction of the bridge on the night in question.[6]

Relative to this interlocutory appeal, Haydon Building filed a traditional motion for summary judgment alleging it was entitled to immunity from liability on all of Green's claims under § 97.002 of the Texas Civil Practice and Remedies Code. As a TxDOT contractor, Haydon Building argued that § 97.002 provided for immunity when the evidence conclusively established it substantially complied with contract documents material to the condition or defect alleged as the proximate cause of the claimed personal injury or death. In that vein, Haydon Building contended

---

[4] The record shows that Delgado faced criminal prosecution as a result of the incident, but the details of his case were not made a part of this record.

[5] Green's theories of liability against Haydon Building and Leedsman Construction are identical. Leedsman Construction's procedural posture has paralleled that of Haydon Building, including appealing the denial of its summary judgment motion urging immunity under § 97.002. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002. The issuance of this opinion and the opinion in the companion *Leedsman* appeal on this same date renders moot Green's pending motion to consolidate the two appeals.

[6] In their briefing, Haydon Building and Green agree that Haydon Building and Leedsman Construction were both responsible for implementation of the Plan.

that, on the night in question, it established by witness testimony that it had personally inspected all closure points of the interstate, and it had verified that all required traffic control devices were placed in compliance with the Plan that governed the Project. Particularly, it urged that TxDOT's engineer's "acceptance of Haydon's work on the night of the incident determine[d] as a matter of law that Haydon was compliant with the TxDOT contract documents."

To its motion, Haydon Building attached multiple exhibits, grouped by similar type as follows: (1) the Texas Peace officer's crash report and other post-accident investigative records of TxDOT and OSHA; (2) affidavits and excerpted depositions of various witnesses; and (3) various documents related to the Plan's implementation of a complete freeway closure during construction, including arial photographs of the Executive Center on-ramp to enter I-10 East; an excerpt of the Texas Manual on Uniform Traffic Control Devices; an excerpt of TxDOT's Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges; and other notes and correspondence. As for witnesses, Haydon Building relied on the excerpted testimony of various persons including Jorge Oregel, a TxDOT Assistant Area Engineer for El Paso County, who was appointed to his position in January 2014; Edmundo Valencia, Jr., a TxDOT construction inspector; Todd Wilkes, Haydon Building's project manager; Jan Nieves Delgado, the driver who crashed into the crane; and Christina Samples, an El Paso Police Officer called to the scene as a first responder. Based on its attached evidence, Haydon Building's motion argued it had "confirmed that the traffic control devices and barricades were in place before, after, and at the time of the accident."

Responding in opposition, Green argued that Haydon Building failed to conclusively establish its entitlement to § 97.002's protection. Particularly, she urged that, because reasonable jurors could reach different conclusions on whether Haydon Building complied with the Plan's express terms at the date and time of the collision, it was not entitled to summary judgment on its

4

statutory immunity defense. She argued there was no final acceptance of the Project by TxDOT, and any acceptance of Haydon Building's performance of the Plan in the hours before the collision, as it urged, did not conclusively establish its compliance with contract documents at the time of the fatal injury, especially when there existed conclusive evidence to the contrary. To her response, Green attached excerpts of deposition transcripts of multiple witnesses, including testimony of some of the same witnesses as Haydon Building, along with testimony of other witnesses who had personal knowledge of the conditions of the site or of the traffic control devices at issue.

The trial court denied Haydon Building's motion for summary judgment. Haydon Building timely appealed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(17).

## II. STANDARD OF REVIEW

We review de novo the trial court's denial of summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). Rule 166a(c) of the Texas Rules of Civil Procedure provides that a court must grant a traditional motion for summary judgment "forthwith if [the summary judgment evidence and relevant pleadings] show that . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Tex. R. Civ. P. 166a(c). If the movant carries its initial burden of proof, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. On review, an appellate court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). But in doing so, "we cannot disregard 'conclusive evidence'—that evidence upon which 'reasonable people could not differ in their conclusions.'" *Helix Energy Sols. Group, Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816

5

(Tex. 2005)). "Typically, evidence is conclusive when it concerns physical facts that cannot be denied or when a party admits it is true." *Id.* at 431 (internal quotation marks omitted) (citing *City of Keller*, 168 S.W.3d at 815).

## III. SECTION 97.002

In its entirety, § 97.002 reads as follows:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

Tex. Civ. Prac. & Rem. Code Ann. § 97.002. By its terms, § 97.002 limits a contractor's liability under the common law, but only when all of its conditions are met. *Id.*; *see also ISI Contracting, Inc. v. Markham*, 647 S.W.3d 489, 495 (Tex. App.—San Antonio 2022, pet. denied) (describing that § 97.002 "*creates* immunity for qualifying contractors based on the nature of the legal injury or damage rather than the type of cause of action or claim."). We have earlier described that § 97.002 has three distinct parts: (1) an introduction describing who qualifies for the statute's protection, (2) a middle portion describing the protection afforded by the statute, and (3) an ending portion that sets forth conditions that must be met for the statute's protection to apply. *A.S. Horner, Inc. v. Navarrette*, 656 S.W.3d 717, 721 (Tex. App.—El Paso 2022, no pet.).

No dispute is raised here that Haydon Building established the first two parts of § 97.002's prerequisites: (1) as a TxDOT contractor, Haydon Building was responsible for implementing the Plan for TxDOT on the bridge construction Project; and (2) Green sued Haydon Building for personal injury and wrongful death damages, claiming the contractor's negligent implementation of the Plan, at the time of the accident, was a proximate cause of her father's injuries and death.

6

*See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002; *see also Navarrette*, 656 S.W.3d at 721. Accordingly, the parties' dispute here centers on the final portion of the statute.

Section 97.002 is recognized by several Texas courts as an affirmative defense on which a contractor bears the burden of proof. *See Brown v. RK Hall Constr., Ltd.*, 500 S.W.3d 509, 512 (Tex. App.—Texarkana 2016, pet. denied); *Peachtree Const., Ltd. v. Head*, No. 07-08-0020-CV, 2009 WL 606720, at *3 (Tex. App.—Amarillo Mar. 10, 2009, no pet.) (mem. op.). As relevant here, Haydon Building must conclusively establish each element of the contested, ending portion of § 97.002's immunity defense. *See Lujan*, 555 S.W.3d at 84. If Haydon Building carried that burden, the burden then shifted to Green, as the nonmovant, to raise a genuine issue of material fact precluding Haydon Building's entitlement to summary judgment. *See id.*

## IV. ANALYSIS

In its sole issue, Haydon Building argues it conclusively established its entitlement to § 97.002 immunity. Specifically, it claims it conclusively established its compliance with the contract documents "on the night of the accident," material to the condition that was alleged as a proximate cause of Mr. Green's fatal injury. It argues that, in determining the required compliance with the Plan, we merely need to construe the Plan's plain language. It points out that, regardless of whether the Plan was inadequate or flawed, it had no discretion to deviate from the Plan's terms. It contends that TxDOT's lead engineer's determination that it complied with the Plan amounted to conclusive proof of its entitlement to § 97.002 immunity.

In response, Green argues that Haydon Building misconstrues its evidentiary burden relative to establishing entitlement to § 97.002's liability protection as a matter of law. Green maintains that Haydon Building, as a movant asserting an affirmative defense, shoulders the burden of conclusively establishing each of § 97.002's conditions. *See* Tex. R. Civ. Proc. 166a(c);

7

*Lujan*, 555 S.W.3d at 84. Based on § 97.002's plain language, she urges that Haydon Building must conclusively establish more than general compliance with material contract terms—that instead, it must establish its contract compliance relative to "the time of the personal injury, property damage, or death," as the plain text of the statute requires. *See* Tex. Civ. Prac. & Rem. Code § 97.002. To this extent, Green contends that Haydon Building's evidence standing alone does not establish it met its initial burden of conclusively establishing every element of its affirmative defense under § 97.002. But, she further argues that, even if Haydon Building did meet its initial burden, her summary judgment evidence was more than sufficient to create a fact issue precluding summary judgment. To resolve this evidentiary dispute, we begin with the terms of the immunity statute.

By its plain words, § 97.002 sets forth particular conditions that must be met before liability protection is afforded to a qualifying contractor. In the final, conditional clause of the provision, immunity is afforded: "if, *at the time of the personal injury, property damage, or death*, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death." Tex. Civ. Prac. & Rem. Code Ann. § 97.002 (emphasis added). In construing this phrasing, this Court has determined "the text provides [a] crucial condition under which the statute applies, and in doing so, [it] reveals the Legislature's intent." *Navarrette*, 656 S.W.3d at 725. Applying that condition, "[a] contractor is only shielded from liability 'if, at the time of the personal injury . . . the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the injury.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 97.002). In *Navarrette*, we noted the phrase "at the time of the injury" imposes a link between two events or conditions. *Id.* More specifically, the injury on which the suit is based is linked temporally with the contractor's

8

compliance with relevant contract documents. *Id.* In context, that link must be viewed relative to the condition or defect that is alleged as the cause of the claimed injury. *Id.*

In a procedurally similar case, Houston's Fourteenth District Court of Appeals construed § 97.002's requirements regarding a claim for property damage. *See Bennett Truck Transp., LLC v. Williams Bros. Const.*, 256 S.W.3d 730, 732 (Tex. App.—Houston [14th Dist.] 2008, no pet.). There, the plaintiff motor carrier alleged that a contractor's lack of compliance with a traffic control plan at the time of the incident had proximately caused damage to a manufactured home it was transporting. *Id.* at 731. The plaintiff's driver testified that, as he approached an area of road construction, no signs indicated that lanes would narrow to such an extent that they would not accommodate an oversized load. *Id.* In contrast, the TxDOT contractor presented evidence that it generally complied with contract signage requirements and an employee checked the site multiple times daily to ensure all signs were in place. *Id.* at 732. More specifically, however, the contractor testified he could not recall any signs missing, but "he could not testify that at the exact date and time of the accident, a sign was present." *Id.* at 732–33. Our sister court of appeals determined that, because the evidence presented a fact issue as to whether the necessary signs were in place at the time of the incident, the trial court erred in granting summary judgment in favor of the contractor. *Id.* at 733.

Here, to establish its entitlement to § 97.002 immunity, Haydon relies on the affidavit and deposition of TxDOT's lead engineer Jorge Oregel, arguing his testimony conclusively established compliance as a matter of law. Oregel testified that employees of Leedsman "placed all of the traffic control devices and signs at all of the entrance ramps of the Project." Oregel further attested that he and a TxDOT inspector, together, had inspected the Project before and after vehicle traffic was diverted from I-10 as required by the Plan. He asserted he had observed "all of the entrance ramps in the Project had traffic control devices and signs placed in accordance with" TxDOT's

9

plans. He further testified that, after midnight on May 11, 2014, he "specifically recall[ed] observing that the TMA's (truck mounted attenuators) were placed," which he himself had approved. He also testified that he inspected each highway closure and determined the traffic control barriers were properly in place in accordance with the Plan.

Haydon Building contends that Oregel's determination of compliance amounts to conclusive proof because the terms of its contract with TxDOT vested "final and binding" authority for determining contract compliance in a TxDOT engineer such as Oregel. As excerpted, the TxDOT contract, portions of which were included in the summary judgment record, provides as follows:

> **5.1. Authority of Engineer.** The Engineer has the authority to observe, test, inspect, approve, and accept the work. The Engineer decides all questions about the quality and acceptability of materials, work performed, work progress, Contract interpretations, and acceptable Contract fulfillment. The Engineer has the authority to enforce and make effective these decisions.
>
> The Engineer acts as a referee in all questions arising under the terms of the Contract. The Engineer's decisions will be final and binding.[7]

In pointing to this provision as dispositive of immunity, Haydon Building relies heavily on *ISI Contracting*, 647 S.W.3d at 501–02. It contends the San Antonio Court of Appeals construed Item 5.1 of the TxDOT contract, which is worded the same as it is in Haydon Building's contract, as establishing entitlement to immunity under § 97.002. Relevant to Item 5.1, *ISI Contracting* concluded that the "Engineer's acceptance of that work determines as a matter of law that [the contractors] were in 'compliance with contract documents material to the condition or defect that was the [alleged] proximate cause of the personal injury, property damage, or death.'" *Id.* (second alteration in original) (citing Tex. Civ. Prac. & Rem. Code Ann. § 97.002).

---

[7] Definitions of terms are provided in TxDOT's Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges. The term "Engineer," is defined as "[t]he Executive Director of the Department or the authorized representative of the Executive Director."

We conclude that *ISI Contracting* is unavailing. The contractor in *ISI Contracting* had completed its repair work several months before the accident that was a subject of the suit. *Id.* There, it was not disputed "that the TxDOT Engineer approved and accepted the work which was the basis of the [plaintiff's] claims." *Id.* at 502. Because *ISI Contracting* involved repair work that had been fully performed in its entirety, the engineer's approval and acceptance of the contractor's work was finally determined long before the injury-causing event occurred. *Id.* at 492. Conversely, the accident in this case happened while Haydon Building was in the process of performing its contract. It had the obligation to place and maintain the planned barricades. For proof of compliance, Haydon Building relied on Oregel's affidavit, which stated that sometime between midnight and 1:00 a.m. the barricades at Executive Center were in place. The accident giving rise to this suit occurred at 2:27 a.m., and as we note below, the dynamic nature of this project meant that workers were moving the barricades to let work crews and vehicles pass. So unlike *ISI Contracting*, this record does not contain an ultimate decision on Haydon Building's contract fulfillment. Stated differently, a lead engineer's approval of a contractor's placement of traffic control barriers during an overnight shift of an ongoing project differs significantly from TxDOT's approval of completed work.

Further, even assuming that Haydon Building met its summary judgment burden by initially establishing its compliance with the Plan through Oregel's inspection and approval of each entrance to the work zone, Green raised genuine issues of material fact as to whether the barriers remained in compliance at the time of her father's death. Here, construction workers testified that, even after traffic barriers had been positioned in place on the Executive Center freeway on-ramp, the barriers were subsequently moved, out of necessity, to get machinery and vehicles to the work zone.

11

Additionally, Delgado, the motorist who crashed into the crane, testified he ultimately found a way onto the lanes of the closed freeway. Initially, he described that he drove in circles on the Executive Center overpass as he looked for an entrance to I-10 East. He relied heavily on his GPS unit for directions. As much as he confirmed that he saw a blocked entrance, he could not otherwise describe the location of the entrance as he could not remember. There is no dispute here that the Executive Center I-10 East on-ramp includes two entrances that merge into a single ramp—where one entrance serves the northbound traffic of Executive Center boulevard while the other entrance serves its southbound traffic. Ultimately, however, there is also no dispute that Delgado drove his vehicle on the closed lanes of the freeway during the time when workers were engaged in planned construction activity. At his deposition, Delgado testified he did not bust through any barricades or jump over any medians to access I-10 East. Although Delgado admitted he initially had trouble accessing a freeway entrance, he nonetheless described that when he did drive onto the lanes of the interstate, there was no traffic device blocking his pathway. Especially relevant to our inquiry, the TxDOT documents hold Haydon Building contractually responsible for not only installing traffic control devices, barriers, and signs, but also responsible for *maintaining* their placement when such devices were needed for construction purposes.

Under the applicable standard of review, we must take as true all evidence favorable to Green and make all reasonable inferences in her favor. *Grant*, 73 S.W.3d at 215. We conclude that a genuine issue of fact exists as to whether Haydon Building complied and remained in compliance with contract documents material to the condition that Green alleged as a proximate cause of the claimed injury. Particularly, workers described they had necessarily moved barriers after midnight to access their equipment and enter the work zone; and no evidence conclusively established the barriers remained in their correct positions between the time of the engineer's last inspection and the time of Mr. Green's death. *See Bennett Truck Transp.*, 256 S.W.3d at 732–33 (holding the

12

evidence presented a fact issue as to whether the necessary signs were in place at the time of the incident when the contractor testified he could not recall any signs missing, but "he could not testify that at the exact date and time of the accident, a sign was present").

Because a fact issue exists as to Haydon Building's compliance at the relevant time, it failed to conclusively establish entitlement to immunity protection under § 97.002 and the trial court properly denied its traditional motion for summary judgment.

We overrule Haydon Building's sole issue.

## V. CONCLUSION

We affirm the trial court's denial of Haydon Building's Second Amended Traditional Motion for Summary Judgment. We deny as moot Green's motion to consolidate.

GINA M. PALAFOX, Justice

July 31, 2024

Before Alley, C.J., Palafox and Soto, JJ.

13