

# NUMBER 13-22-00078-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BRONCO ASSET MANAGEMENT, LLC,**          **Appellant,**

**v.**

**FYP, LLC D/B/A TEXAS PROPERTY
TAX LOANS, CITY OF MERCEDES,
MERCEDES INDEPENDENT
SCHOOL DISTRICT, HIDALGO COUNTY,
SOUTH TEXAS ISD, HIDALGO COUNTY
DRAINAGE DISTRICT #01, AND
SOUTH TEXAS COLLEGE,**          **Appellees.**

---

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

In this suit involving delinquent tax liens, appellant Bronco Asset Management,

LLC (Bronco) appeals from the trial court's summary judgment in favor of appellees FYP, LLC d/b/a Texas Property Tax Loans (FYP); City of Mercedes and Mercedes Independent School District (collectively, the City); and Hidalgo County, South Texas ISD, Hidalgo County Drainage District #01, and South Texas College (collectively, the County). By three multifarious issues, Bronco argues the trial court erred in granting summary judgment because: (1) FYP, the City, and the County did not meet their summary judgment burden; (2) FYP's summary judgment evidence was improperly considered over Bronco's objection; and (3) Bronco's summary judgment evidence raised a genuine issue of material fact as to the value of the property. We affirm in part and reverse and remand in part.

## I. BACKGROUND

On November 4, 2019, FYP filed its original petition for the recovery of delinquent taxes. The County and the City subsequently intervened in the suit, alleging that Bronco owed additional delinquent property taxes for tax years 2018 and 2019.

## A. FYP's Motion for Summary Judgment

On October 28, 2020, FYP filed a traditional motion for summary judgment, seeking foreclosure on the tax liens it held. The attached summary judgment evidence shows that Bronco, delinquent in payment of property taxes for the years 2006–17, obtained a loan from FYP in the original amount of $309,965.60 and executed a promissory note evincing the transaction on July 31, 2018. Both parties executed a tax lien contract on the same date. As part of this transaction, Bronco executed sworn

2

documents authorizing FYP to pay the delinquent taxes and authorizing the Hidalgo County Tax Assessor-Collector to transfer the relevant tax liens on the property to FYP. Also attached as evidence were sworn certificates signed by the Hidalgo County tax assessor-collector certifying that FYP had paid the "taxes, penalties, interest, and collection costs" on the property for tax years 2006–2010, 2012, and 2015–2017. All of these documents were recorded with the Hidalgo County Clerk's Office on August 14, 2018.

The promissory note provided that Bronco would make monthly payments of $4,252.25 in satisfaction of the principal, accrued interest, and outstanding fees on the loan. Interest accrued in the amount of 10.9% annually. Bronco also agreed to pay late fees in the amount of "the lesser of (i) five cents for each $1 of the scheduled installment or (ii) the maximum late charge, if any under applicable law, in order to defray the expense of handling the delinquent payment." Over the course of nearly a year, Bronco paid down the principal on this note by $11,868.55. However, according to an affidavit sworn to by Manuel Longoria, Chief Operations Officer and custodian of records for FYP, the last payment Bronco made "was June 30, 2019[,] which was applied to [the] April 1, 2019 payment." Thus, the total amount remaining on the principal when Bronco defaulted was $298,097.05.

Attached as "Exhibit A" to the motion was what appears to be a printout of information for the property taken from the Hidalgo County Appraisal District's website. This exhibit represented that the most recent appraised value of the property was

3

$622,839.00. A "Pay-History and Pay-Off" document from October 19, 2020, which was also attached as evidence, itemized the amounts Bronco still owed on the loan. According to this document, Bronco owed a total of $357,752.70. Finally, two affidavits by FYP's attorney were attached that detailed the history of FYP's attempts to collect on the loan and the legal fees incurred in seeking to enforce the loan.

**B.     The City and the County's Motions for Summary Judgment**

On October 5 and November 9, 2020, respectively, the County and City filed their separate motions for summary judgment. These motions also sought foreclosure on delinquent tax liens, and each taxing unit attached as an exhibit a certified copy of the respective entity's tax roll entry reflecting the delinquency.

**C.     Bronco's Response**

Bronco filed objections and special exceptions in response to the motions for summary judgment. Bronco specifically objected to FYP's "Exhibit A" on the grounds that it was unauthenticated and contained hearsay. Attached to the response as evidence was an affidavit signed by Rafic de los Santos, the managing member of Bronco. The record does not contain a ruling on Bronco's objections.

**D.     The Summary Judgment[1]**

The trial court granted all three motions for summary judgment and its final summary judgment itemized the amounts awarded to FYP as follows:

---

[1] The trial court originally granted summary judgment in favor of FYP, the City, and the County on June 1, 2021. However, the trial court later granted Bronco's motion for new trial, and the parties relitigated their motions for summary judgment. The trial court signed its amended final summary judgment, which is the order on appeal, on November 17, 2021.

4

Plaintiff FYP . . . shall recover judgment against Defendant Bronco . . . its taxes, penalties and interest, due and owing, and unpaid against the property . . . for the years 1998–2004, 2006–2010, 2012, [and] 2015–2017 in the principal amount of $298,097.05 plus interest in the amount of $67,922.26, late fees of $5,102.64, Attorney's Fees/[]Foreclosure fees of $5,186.00, Miscellaneous fees of $637.83, for a total of $376,945.78 (through May 3, 2021[,] and accruing interest at the rate of $89.02 per diem) at the rate of ten and 9/10 percent (10.900%) per annum, and foreclosure of the constitutional and statutory liens upon real property described herein as to Defendant Bronco . . . .

The judgment also awarded to the City and the County a total of $40,262.05 and $17,285.93, respectively. Lastly, the judgment adjudicated the value of the property as $622,839.00. This appeal followed.

## II.    STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Tex. Com. Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002); *see* TEX. R. CIV. P. 166a(c). Traditional motions for summary judgment "must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Only when the movant meets its burden to prove it is entitled to judgment as a matter of law does the burden then shift to the nonmovant to raise a genuine issue of material fact that precludes summary judgment. *Lujan*, 555 S.W.3d at 84.

5

When reviewing a traditional motion for summary judgment, we accept the nonmovant's evidence as true and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When the trial court's order does not specify the grounds for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Id.* at 216.

### III.   ANALYSIS

### A.   FYP

By four sub-issues, Bronco asserts that summary judgment in FYP's favor was improper because: (1) the amounts awarded to FYP in the judgment are not supported by the summary judgment evidence; (2) the motion for summary judgment failed to specifically reference the grounds for summary judgment and the evidence relied upon; (3) the trial court should have sustained Bronco's objection to FYP's "Exhibit A"; and (4) a genuine issue of material fact precluded the trial court from finding the market value of the property to be $622,839.00. We begin by discussing the relevant law governing FYP's status as a transferee of a valid tax lien.

### 1.   Property Tax Liens

Property taxes are unique because they, "by definition, are tied to land or personal property, unlike other types of taxes, which may be tied to a person or entity." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 42 (Tex. 2018). "On January 1 of each year, a tax lien attaches to property to secure the payment of all

6

taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches." TEX. TAX CODE ANN. § 32.01(a). Property taxes are due upon receipt and become "delinquent if not paid before February 1 of the year following the year in which [they are] imposed." *Id.* § 31.02(a). "If property taxes are not paid by the owner or by another person . . . , the taxing unit may secure payment by legal action, including foreclosure on the lien, seizure and sale of personal property to satisfy the bill, or a suit to enforce personal liability for taxes." *Sebastian Cotton*, 555 S.W.3d at 43.

A tax lien is a "creature of statute," and the enforceability of transferred tax liens is governed by § 32.06 of the tax code. *Genesis Tax Loan Servs. v. Kothmann*, 339 S.W.3d 104, 108–09 (Tex. 2011); *see* TEX. TAX CODE ANN. § 32.06. A property owner may authorize another to pay the taxes imposed by a taxing unit on the owner's property. TEX. TAX CODE ANN. § 32.06(a-1). In that situation, the tax lien on the property may be transferred from the taxing authority to the person who pays the taxes on behalf of the owner. *Id.* § 32.06(a-2). A property owner may also enter into a contract for the payment of delinquent property taxes with a licensed property tax lender. *Id.* § 32.065(a); TEX. FIN. CODE ANN. § 351.002(1). Funds advanced by the transferee under such a contract "are limited to the taxes, penalties, interest, and collection costs paid as shown on the tax receipt, expenses paid to record the lien, plus reasonable closing costs." TEX. TAX CODE ANN. § 32.06(e). If a transferee pays the property owner's taxes and any penalties, interest, and collection costs imposed, the collector for the taxing unit must issue a receipt

7

to the transferee and must certify that the taxes have been paid by the transferee on behalf of the property owner and that the taxing unit's lien has been transferred to the transferee. *Id.* § 32.06(b). The transferee must then record the tax lien with the deed records of each county in which the encumbered property is located. *Id.* § 32.06(d). The transferee is then "subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale." *Id.* § 32.065(c).

"At any time after its tax on property becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." *Id.* § 33.41(a). "[T]he transferee of a tax lien is entitled to foreclose the lien in the manner provided by law for foreclosure of tax liens." *Id.* § 32.06(c). A tax lien transferee "may file its claim and seek foreclosure in the suit for all amounts owed the transferee that are secured by the transferred tax lien, regardless of when the original transfer of tax lien was recorded or whether the original loan secured by the transferred tax lien is delinquent." *Id.* § 33.445(a); *see Ovation Servs., LLC v. Richard*, 624 S.W.3d 610, 617 (Tex. App.—Tyler 2021, no pet.).

### 2. Summary Judgment Evidence

Because it is dispositive, we next address Bronco's contention that FYP's summary judgment evidence did not establish its entitlement to summary judgment. According to Longoria's affidavit:

> Payment of the Note is secured by liens arising for ad valorem taxes, penalties, interests, and costs in accordance with Article VII, Section 15,

8

Texas Constitution. [Bronco] signed sworn document(s) authorizing the transfer of the tax liens as required under [§] 32.06(a-1), Texas Property Code. The tax liens for 1998–2004, 2006–2010, 2012, 2015–2017 were transferred to Transferee as evidenced by certified statement(s) by the applicable taxing units in accordance with [§] 32.06(b), Texas Property Tax Code . . . . Payment of the Note is further secured by Tax Lien Contract dated July 31, 2018 . . . .

However, FYP did not provide the applicable certified statements for the years 1998–2004, nor did it provide proof that there were any delinquent taxes remaining with respect to those liens when the contract was made. Consistent with the sworn documents executed by de los Santos authorizing the transfer of tax liens, the certified statements of transfer of tax lien executed by the tax assessor-collector for Hidalgo County established only that tax liens for the years 2006–2010, 2012, and 2015–2017 were transferred to FYP. FYP's contention that the obligation in the tax lien contract was secured, in part, by the tax liens for years 1998–2004, when no evidence demonstrates that an amount on those tax liens was delinquent at the time the contract was made, calls into question whether the tax lien contract is void. *See* TEX. TAX CODE ANN. § 32.06(a-7) ("A contract between a transferee and a property owner that purports to authorize payment of taxes that are not delinquent or due at the time of the authorization . . . is void."); *id.* § 32.065(i) ("An agreement under this section that attempts to create a lien for the payment of taxes that are not delinquent or due at the time the property owner executes the sworn document under [§] 32.06(a-1) is void.").

Further, funds advanced by the transferee under such a contract "are limited to the taxes, penalties, interest, and collection costs paid as shown on the tax receipt, expenses paid to record the lien, plus reasonable closing costs." *Id.* § 32.06(e). The tax lien contract

reflects that the initial balance of the note—the funds advanced—was $309,965.60. The applicable certified statements sworn to by the Hidalgo County Tax Assessor-Collector reflect that the total amount FYP secured through the transfers of the tax liens (including taxes, penalties, interest, and collection costs) was $297,816.60. *See id.* The total amount of recording costs reflected by the summary judgment evidence is $244.00. *See id.* This means the difference between the funds advanced under the contract—$309,965.60— and the "taxes, penalties, interest, . . . collection costs . . . , [and] expenses paid to record the lien"—$298,060.60—is $11,905. *See id.*

FYP made no assertion below or on appeal that the unaccounted for $11,905 is a reasonable closing cost. *See id.* The Finance Commission of Texas is required to "adopt rules relating to the reasonableness of closing costs, fees, and other charges permitted" by § 32.06. *Id.* § 32.06(a-4)(2). According to the administrative code, "[t]he general maximum fee for closing costs is $900." 7 TEX. ADMIN. CODE ANN. § 89.601(c)(3). Assuming that FYP charged the maximum fee for closing costs, this still would not explain $11,005 of the principal, as no evidence demonstrated that this amount was secured by the transfer of a tax lien.

The summary judgment evidence shows that the amount awarded to FYP exceeds "all amounts owed . . . that are secured by the transferred tax lien[s]." *See* TEX. TAX CODE ANN. §§ 32.06, 32.065, 33.445(a). Because of this discrepancy, FYP has failed to establish it is entitled to summary judgment as a matter of law. *See Lujan*, 555 S.W.3d at 84; *cf. Harris v. Jackson & Walker, L.L.P.*, No. 05-93-01795-CV, 1995 WL 23008, at *3

(Tex. App.—Dallas Jan. 20, 1995, no writ) (not designated for publication) ("The Firm's own summary judgment evidence establishes a genuine issue of material fact."). We sustain Bronco's first issue as to FYP.

## B.     The City and the County

Bronco contends that the City's and the County's motions for summary judgment should have been denied because "none of the motions state the elements of the movants' cause(s) of action and none of the motions have specific references to the summary judgment evidence to support the movants' claims." We disagree. "While it is a better practice to specifically cite to the summary-judgment evidence in the motion itself, Rule 166a(c) does not require it." *Regional Specialty Clinic, P.A. v. S.A. Randles & Assocs., P.C.*, 625 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also Jimmie Luecke Child. P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *4 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.) ("[W]e have previously noted that [Rule 166a(c)] 'contains no requirement that the *evidence* be referenced more specifically than being incorporated into the motion,' . . . especially when, as here, the summary judgment record is not voluminous . . . ."). The summary judgment record is far from voluminous in this case. In total, the City's and the County's motions and evidence span approximately twelve pages.

Additionally, the City's motion for summary judgment explained that its suit was "predicated upon the existence of a tax lien . . . on property owned by [Bronco]." The City referenced portions of the tax code relating to foreclosures on tax liens and requested

11

that "[j]udgment be entered in favor of [the City's] tax liens against the property." Likewise, the County sought "[j]udgment awarding taxes, penalties, interest, attorney's fees[,] and court costs, as a matter of law, together with foreclosure of their tax liens against [Bronco]." The County cited relevant portions of the tax code and corresponding exhibits. Both the City and the County argued in their motions that the certified copies of the delinquent tax rolls attached were prima facie evidence of their claims. Bronco does not claim that the motions for summary judgment did not provide fair notice of the relief being sought. We conclude that the City and the County expressly presented the grounds for summary judgment in their motion. *See McConnell*, 858 S.W.2d at 340 ("Grounds may be stated concisely, without detail and argument." (quoting *Roberts*, 811 S.W.2d at 146)).

Next, to the extent Bronco objects to the sufficiency of the evidence to support the judgments in favor of the City and the County, we conclude these entities met their summary judgment burden.

> In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

TEX. TAX CODE ANN. § 33.47(a).

The City produced a certified copy of a delinquent tax statement. According to this evidence, for tax years 2018 and 2019, Bronco owed a total of $14,430.18 to the City of Mercedes and owed a total of $25,831.87 to the Mercedes Independent School District.

12

The County also produced a certified copy of a delinquent tax statement. This statement indicated that, if the taxes for tax years 2018 and 2019 were still unpaid after November 30, 2020, Bronco would owe a total of $11,277.28 in taxes and penalties to Hidalgo County, a total of $1,945.48 in taxes and penalties to the Drainage District #01, a total of $960.41 in taxes and penalties to South Texas ISD, and a total of $3,432.76 in taxes and penalties to South Texas College.

"Once a taxing authority in a delinquency suit introduces the tax records described in [§] 33.47(a) into evidence, it establishes a prima facie case 'as to every material fact necessary to establish its cause of action.'" *City of Bellaire v. Sewell*, 426 S.W.3d 116, 120 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Nat'l Med. Fin. Servs., Inc. v. Irving Indep. Sch. Dist.*, 150 S.W.3d 901, 906 (Tex. App.—Dallas 2004, no pet.)).[2] "After the taxing authority makes its prima facie case by introducing the required records, the burden of proof then shifts to the taxpayer to show, by introducing competent evidence, that he has paid the full amount of taxes, penalties, and interest or that there is some other defense that applies to his case." *Id.* We conclude that the City and the County met their summary judgment burdens concerning their foreclosure claims. We overrule Bronco's first issue as to the City and the County.

---

[2] After the taxing authority makes its prima facie case by introducing the required records, the burden of proof then shifts to the taxpayer to show, by introducing competent evidence, that he has paid the full amount of taxes, penalties, and interest or that there is some other defense that applies to his case.

*City of Bellaire v. Sewell*, 426 S.W.3d 116, 120 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Bronco does not contend that it paid the full amount owed. *See id.*

## C.    Property Valuation

Finally, Bronco asserts that its summary judgment evidence raised a fact issue as to the market value of the property. In a suit for foreclosure on a tax lien on property, the court is required to determine the market value of the property and incorporate its finding into the final judgment. TEX. TAX CODE ANN. § 33.50(a). "The appraised value of the property according to the most recent appraisal roll approved by the appraisal review board is presumed to be its market value on the date of trial." *See id.* The City provided this evidence, the admissibility of which Bronco does not contest on appeal. Once the City produced this evidence, Bronco bore the burden "of establishing that the market value of the property differs from that appraised value." *Id.* The affidavit signed by de los Santos and attached as evidence to Bronco's summary judgment response states:

> I am familiar with fair market values and how such values are determined. I have education, training and experience in real estate and real estate values and sales. The present fair market value of the subject property is not $622,839.00 as purported by the Plaintiff and Intervenors nor was it that amount when the taxes in questions were assessed. The value is excessive. It does not reflect the current market conditions nor the particularities of property values in Mercedes, nor the fact that the property remains unrented or unleased and that we have not been able to market it or lease it, despite diligent efforts.

However, a complaint that a property is overvalued "is not a proper defense in a suit to recover delinquent taxes." *Sewell*, 426 S.W.3d at 121–22. To contest the appraised value of the property, the property owner must first adjudicate the issue through the administrative proceedings laid out in Chapters 41 and 42 of the tax code. *See* TEX. TAX. CODE ANN. §§ 41.01–.71, 42.01–.43. "[F]ailure to exhaust the exclusive administrative

14

remedies precludes judicial review of the appraisal and also deprives the property owner of the right to raise such protest as a defense against a suit to enforce collection of delinquent taxes." *Nev. Gold & Silver, Inc. v. Andrews Indep. Sch. Dist.*, 225 S.W.3d 68, 76 (Tex. App.—El Paso 2005, no pet.). Bronco presented no evidence that it exhausted its administrative remedies in contesting the appraised value of the property. Therefore, the trial court did not err in concluding that Bronco failed to raise a fact issue concerning the market value of the property. *See id.*; *see also* TEX. TAX CODE ANN. § 33.50(a).

We overrule Bronco's third issue.

## IV.    CONCLUSION

We affirm the trial court's judgment in all respects as it pertains to the City and the County. We reverse the trial court's judgment as it pertains to FYP and remand for further proceedings consistent with this memorandum opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
6th day of July, 2023.

15