In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00039-CV
NO. 09-24-00040-CV

**LOT OWNERS OF SECTION E-2, RAYBURN COUNTRY, Appellants**

**V.**

**RAYBURN COUNTRY ASSOCIATION, INC., Appellee**

**and**

**LOT OWNERS OF SECTION E-3, RAYBURN COUNTRY, Appellants**

**V.**

**RAYBURN COUNTRY ASSOCIATION, INC., Appellee**

On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause Nos. 40129 and 40309

## MEMORANDUM OPINION

Lot Owners of Section E-2 ("E-2") and Lot Owners of Section E-3 ("E-3" and

collectively "Lot Owners") are property owners in a subdivision known as Rayburn

1

Country that is managed by a homeowners' association, Rayburn Country Association, Inc. ("RCA"). In separate suits for declaratory relief, the Lot Owners sought to terminate the Restrictions, Reservations, Covenants and Conditions Applicable to Section E-2 Rayburn Country and the Restrictions, Reservations, Covenants and Conditions Applicable to Section E-3 Rayburn Country (collectively "Restrictions"). Lot Owners and RCA filed competing motions for summary judgment, and the trial court granted the summary judgment in favor of RCA, awarded attorney's fees, and ultimately dismissed all claims of the Lot Owners. Lot Owners appeal the trial court's Final Judgment in each cause and in three issues argue the trial court erred: (1) in declaring that the Lot Owners had not validly terminated the Restrictions; (2) in entering a mandatory injunction requiring the execution of a document cancelling the recorded Terminations; and (3) in awarding attorney's fees.[1] We hold the Lot Owners validly terminated the Restrictions governing E-2 and E-3 as of May 31, 2026, and the trial court erred in granting RCA's motion for summary judgment. We reverse the judgment of the trial court, and we render judgment for the Lot Owners on their claims for declaratory relief. We further reverse the trial court's award of attorney's fees to RCA, and we remand

---

[1]The Lot Owners submitted a combined appellate brief for both cases and RCA submitted a combined brief in response. The two cases have not been consolidated in the trial court or the appellate court, but we issue a combined opinion because the two appeals involve similar facts and arguments.

the matter of attorney's fees to the trial court for further proceedings consistent with this opinion, including whether the Lot Owners are entitled to an award of attorney's fees and if so, the amount thereof.

## Background

In May 2022, E-2 filed a petition for declaratory judgment against developer Rayburn Country, Inc. seeking to terminate the E-2 Restrictions (recorded at Vol. 306, Page 556 in the deed records of Jasper County, Texas), including but not limited to the annual association fee applicable to E-2. Specifically, E-2 sought to terminate the Restrictions filed in 1978 by developer Rayburn Country, Inc. that included the annual association fee. E-2 alleged that sections nine and fifteen of the Restrictions detail that members of the homeowners' association can terminate the Restrictions and fee by a majority vote of its members, and that this was done on April 1, 2022. According to E-2, Rayburn Country, Inc. stated that it would not honor the termination. E-2 requested that the trial court issue an order declaring that the Restrictions were rightfully terminated and are unenforceable. Attached to the Original Petition were: the Restrictions; Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-2 of Rayburn Country, Jasper County, Texas filed on April 1, 2022; and Official Absentee Ballots of property owners in Section E-2, Rayburn Country Subdivision.

On May 25, 2022, E-2 filed Plaintiff's First Amended Petition. The Petition included the same cause of action for declaratory judgment.

On June 8, 2022, RCA filed Intervenor's Original Answer denying all allegations in the Original Petition. That same day, RCA filed a Plea in Intervention. Later, RCA filed a First Amended Plea in Intervention that sought a declaratory judgment and mandatory injunction against E-2 and its representatives, Erik Tolpo and Herbert Keith Woodard, Sr. In the Plea, RCA requested that the trial court declare that documents recorded and titled "Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-2 of Rayburn Country, Jasper County, Texas" and "Removal of Section E-2 Rayburn Country from 'Rayburn Country Association'" fail to meet the requirements specified in the Restrictions for modification or termination. RCA requested a mandatory injunction requiring Woodard and E-2 prepare and file a document retracting the notification of termination in "Removal of Section E-2 Rayburn Country from 'Rayburn Country Association.'" RCA requested a mandatory injunction requiring Tolpo and E-2 to prepare and file a document retracting the notification of termination in "Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-2 of Rayburn Country, Jasper County, Texas." Finally, RCA requested attorney's fees and costs.

On July 26, 2022, RCA filed its Second Amended Plea in Intervention that included the same request for relief but attached certain documents, Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-2 of Rayburn Country, Jasper County, Texas and Restrictions, Reservations, Covenants and Conditions Applicable to Section E-2 of Rayburn Country.

On September 2, 2022, E-3 filed Plaintiff's Original Petition for declaratory judgment against Rayburn Country, Inc. Similar to the suit involving E-2, the E-3 plaintiffs sought a declaration from the trial court that the Restrictions, Reservations, Covenants and Conditions applicable to E-3, executed and recorded in 1978 (recorded at Vol. 306, Page 573 in the deed records of Jasper County, Texas), were terminated pursuant to a majority vote in accordance with the Restrictions and therefore no longer enforceable. Certain documents were attached to the petition, including the Restrictions, Reservations, Covenants and Conditions Applicable to Section E-3 Rayburn Country, a Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-3 of Rayburn Country, Jasper County, Texas, and certain Official Absentee Ballots.

In November 2022, RCA filed a Plea in Intervention and Countersuit as to E-3. In the Intervention and Countersuit, RCA requested that the trial court enter an order that the Termination of Declaration of Restrictions, Reservations, Covenants and Conditions for Section E-3 is invalid as it does not comply with the Restrictions.

5

RCA requested a declaratory judgment against E-3 and representative, Charlie Beckett, that the document titled "Termination of Declaration of Restrictions" recorded in Jasper County, Texas, and the documents in support, fail to meet the requirements of the Restrictions and state law required to modify or terminate Restrictions applicable to E-3. RCA also requested a mandatory injunction requiring Beckett and E-3 to file a document referencing and retracting the "Termination of Declaration of Restrictions." RCA sought attorney's fees and court costs.

On June 21, 2023, E-2 filed Plaintiff's Motion for Traditional Summary Judgment. In the Motion for Summary Judgment, E-2 argues that although a meeting for the formal vote was noticed and held, it was not required for the Lot Owners. According to E-2, RCA is relying on the Texas Property Code that requires a property owners' association to give written notice of an election or vote for a valid election or vote at a meeting. E-2 asserts this section does not apply because the vote was not taken at the meeting. *See* Tex. Prop. Code Ann. § 209.0056. Further, E-2 contends the Restrictions do not require that a vote be taken at a meeting. E-2 argues that the Texas Property Code further requires that the property owners' association give notice of an election or vote not taken at a meeting, yet the Restrictions only required "a majority of the owners and the execution and recording of the instrument." E-2 argues that because the owners, and not RCA, were terminating or changing the Restrictions, E-2 only had to comply with Section 15 of the

6

Restrictions. E-2 further contends that because it complied with Section 15, it was properly released from the Restrictions, that Lot Owners in Section 38 successfully amended their Restrictions in a similar fashion, and E-2 requests an order declaring such Restrictions have been terminated and they seek a recovery of attorney's fees. The summary-judgment evidence included: the Restrictions; Declaration of Erik Tolpo; recorded copy of the Termination of the Restrictions; Vote Count; Official Absentee Ballots; recorded copy of a Corrective Instrument; recorded copy of Amendment to Restrictive Covenants Section 38, Rayburn Country; and Affidavit for Attorney's Fees with billing invoice.

On June 26, 2023, E-3 filed Plaintiff's Motion for Traditional Summary Judgment. Similar to the Motion for Summary Judgment filed by E-2, E-3 also argues that a formal vote or meeting was not required by the Restrictions, and therefore even if all property owners in the Section were not given notice, the majority of property owners in the Section consented. E-3 further contends that section 209.0056 of the Texas Property Code only imposes a written notice requirement of an election or vote for a property owners' association when the election or vote is taken at an owners' meeting. This Section is inapplicable because no vote was taken at a meeting, and neither Section 8 nor 14 of the Restrictions requires a vote to be taken at a meeting. E-3 argues that E-3 properly exercised its rights under section 14 of the Restrictions and voted to terminate the Restrictions,

7

and E-3 requests a declaratory judgment stating the same. Further, E-3 requests attorney's fees. E-3's summary-judgment evidence includes: the Restrictions; Declaration of Charles Beckett; a recorded copy of the Termination of the Restrictions; Official Absentee Ballots; a recorded copy of Amendment to Restrictive Covenants Section 38, Rayburn Country; and an Affidavit for Attorney's Fees with billing invoice.

On August 29, 2023, RCA responded to both E-2's and E-3's Motions for Summary Judgment, separately, and filed its Response to Plaintiff's Motion for Traditional Summary Judgment and Rayburn Country Association's Counter-Motion for Summary Judgment in each case. RCA argues that the Restrictions as outlined in section 8 (E-3) and section 9 (E-2) require a vote of all property owners in Rayburn Country, not just one section, to terminate the annual association fees. According to RCA, Rayburn Country is comprised of over forty distinct sections and each property owner in each section is a member of the property owners' association. Here, only E-2 and E-3 lot owners were provided notice of the vote, not all members of the property owners' association.

Next, RCA argues that the Texas Property Code chapter 209, enacted in 2001, requires a vote to amend declarations in certain dedicatory instruments, and that chapter 209 specifically supersedes any contrary requirements in such instrument. *See generally id.* Ch. 209; *see also id*. § 209.0041. According to RCA, this chapter

8

requires notice to all owners entitled to vote and voids any provisions in the Restrictions that disqualify a property owner from voting. *See id.* § 209.0059. Therefore, if the Lot Owners interpret the Restrictions to allow terminations without the notice and vote of all property owners, section 209.0059 voids that provision. *See id.* RCA argues that to amend the Restrictions, the instrument must establish both the right and method of amendment, the changes must be a correction, improvement, or reformation rather than a complete destruction of the agreement, and the amendment must not be illegal or against public policy. RCA asserts that E-2's and E-3's efforts are illegal because they sought termination, not an amendment, and it violates the Texas Property Code.

RCA argues that all property owners in the subdivision were required to have notice before any vote to terminate their property rights, and that E-2's and E-3's lack of notice to all property owners deprives them of representation.

Finally, RCA contends that the Lot Owners' argument that RCA should be estopped from opposing this suit cannot be a ground for summary judgment relief because the Lot Owners failed to plead the affirmative defense of estoppel, and it is therefore waived. Further, RCA asserts that E-2 and E-3 failed to provide adequate summary judgment evidence required for estoppel.

In the Response, RCA also objects to the summary judgment evidence for attorney's fees and argues that the affidavits fail to disclose facts supporting the fees.

9

RCA also included a Counter-Motion for Summary Judgment and alleged that the Lot Owners' terminations were the result of an illegal vote; RCA makes the same arguments in support of its summary judgment motion that it made in response to the Lot Owners' summary judgments.

RCA's summary-judgment evidence includes: a business records affidavit listing all E-2 and E-3 lot owners and recorded votes; E-2's and E-3's Response to Requests for Production with mailing notices for the vote; E-2's and E-3's Termination of Declaration of Restrictions, Reservations, Covenants and Conditions and voting ballots; and an Affidavit of attorney Scott Stover regarding attorney's fees.

RCA argues that E-2 and E-3 filed a declaratory judgment action to declare the terminations were valid, in a situation where it did not need to file its suit at all because if unopposed, the terminations would become unassailable over time. According to RCA, its countersuit was necessary to invalidate the filing and is an independent cause of action that would have been valid even if E-2 and E-3 had never filed their suits. Finally, because in a declaratory judgment action attorney's fees are recoverable, RCA contends that it could have recovered its attorney's fees absent its countersuit. RCA insists that it was forced to intervene and countersue after RCA failed to name it as a party and instead chose to sue Rayburn Country Incorporated, a defunct corporation.

On January 19, 2024, the trial court signed an order granting RCA's Counter Motion for Summary Judgment against E-2 stating:

> That the "Termination of Declaration of Restrictions" filed of Record in Volume 1265 Page 1001, Official Records of Jasper County, Texas, and the underlying vote filed in support of the document, fails to meet the requirements of the filed Restrictions and state law to either modify or terminate such Restrictions as to the lots of Rayburn Country Section E-2, and therefore such Termination is Invalid and Void.
>
> That the "Corrective Instrument" filed of Record in Volume 1280 Page 994 Official Records of Jasper County, Texas, and the underlying vote filed in support of the document, fails to meet the requirements of the filed Restrictions and state law to either modify or terminate such Restrictions as to the lots in Rayburn County Section E-2, and therefore such Termination is Invalid and Void.
>
> IT IS ORDERED that [RCA] is granted a mandatory injunction requiring Erik Tolpo and [E-2] to prepare and file a document in the Official Records of Jasper County, Texas, referencing the "Termination of Declaration of Restrictions" filed of Record in Volume 1265 Page 1001, and Vol. 1280 Pg. 994, Official Records of Jasper County, Texas, and retracting such notification of termination unequivocally.

That same day, the trial court signed a similar order granting RCA's Counter Motion for Summary Judgment against E-3 that states:

> That the "Termination of Declaration of Restrictions" filed of Record in Vol. 1274, Pg. 81, Official Records of Jasper County, Texas, and the underlying vote filed in support of the document, fails to meet the requirements of the filed Restrictions and state law to either modify or terminate such Restrictions as to the lots of Rayburn Country Section E-3, and therefore such termination is Invalid and Void.
>
> IT IS ORDERED that [RCA] is granted a mandatory injunction requiring Charlie Beckett and [E-3] to prepare and file a document in the Official Records of Jasper County, Texas, referencing the "Termination of Declaration of Restrictions" filed of Record in Vol.

11

1274, Pg. 81, Official Records of Jasper County, Texas, and retracting such notification of termination unequivocally.

In both cases, the trial court further awarded RCA attorney's fees in the amount of $1,000.00 and provided an amount for attorney's fees on appeal and stated that all amounts accrue post judgment interest at a rate of 8.25% per annum, compounded annually. Both Orders denied all other relief requested but not granted and disposed of all parties and claims.

That same day, the trial court signed separate Orders denying E-2's and E-3's Motion for Traditional Summary Judgment.

This appeal followed.

In a combined appellate brief, Lot Owners challenge the Order granting RCA's summary judgment in three issues. Lot Owners argue that the trial court erred: (1) in declaring that they had not validly terminated the Restrictions, (2) in entering a mandatory injunction requiring the execution of a document cancelling the recorded Terminations, and (3) in awarding attorney's fee.[2]

## Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant and

---

[2]On appeal, the Lot Owners do not challenge whether RCA is a proper party to the underlying suits.

12

indulging every reasonable inference in its favor. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). With a traditional motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *See id.*; *see also* Tex. R. Civ. P. 166a(c). "An issue is conclusively established 'if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.'" *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs v. Haussecker*, 974 S.W.3d 31, 44 (Tex. 1998)). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. When, as here, the parties file competing motions for summary judgment, and the trial court grants one and denies the other, we review all questions presented, examine the parties' summary judgment evidence, and render the judgment the trial court should have rendered. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009) (citing *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004)); *see also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

**Analysis**

In their first issue, Lot Owners argue that the plain language of the Restrictions expressly allows a majority of owners in E-2 and E-3 to cancel the respective Restrictions encumbering their property, and they did so here with a majority vote.

13

Lot Owners contend that RCA is estopped from arguing that the Lot Owners cannot use the provisions of the Restrictions to terminate the Restrictions because RCA previously allowed property owners in Section 38 of Rayburn Country to amend their Restrictions pursuant to an identical provision permitting the change upon a majority vote of the property owners. Lot Owners assert that RCA cannot allow certain property owners to amend their Restrictions while denying other property owners the same right under an identical provision. Lot Owners also argue that they did not have to comply with Texas Property Code section 209.0056 because they only sought to terminate the Restrictions that affected E-2 and E-3, not the whole subdivision; therefore, it was not an association-wide election. Lot Owners contend that section 209.0056 places certain notice requirements on the property owners' association, not the Lot Owners, for elections and votes. Lot Owners argue that section 209.0059, a statute that voids any provision in a Restriction that disqualifies a property owner from voting in certain circumstances, is inapplicable because the Restrictions contain no such provision.

The dispute pertains to recorded Deed Restrictions for both E-2 and E-3, each containing the same relevant language as follows:

The provision reads:

The covenants and restrictions herein set forth shall run with the land and shall be binding upon Rayburn, its successors and assigns, and all persons or parties claiming under it, until May 31, 2006, at which time they shall be automatically extended for three successive periods of ten

14

(10) years each unless prior to the expiration of such period or any such successive ten (10) year period, as the case may be, the owners of a majority of lots in said section shall have executed and recorded an instrument changing these covenants and restrictions in whole or in part or releasing any portion of the property from any one or more, or all, of said restrictions the provisions of such instrument. However, no amendment modifying the amortization charges shall be effective while the note or other capital obligation is outstanding without consent of the holder of such or other obligation.

*See*, paragraph 15 in the E-2 Restrictions and paragraph 14 in the E-3 Restrictions. The Restrictions for both E-2 and E-3, sections 9(d) and 8(d), respectively state as follows:

(d) Said annual Association charge shall remain in effect so long as these [R]estrictions are in force unless terminated sooner by the members of the Association by vote of a majority of its members entitled to vote at a meeting especially called to consider such amendment.

Additionally, the Restrictions provide that "[m]embership shall be mandatory for all lot owners for so long as they are lot owners." Chapter 209 of the Texas Property Code applies to residential subdivisions that are subject to a declaration authorizing a residential property owners' association to collect regular or special assessments on all or a majority of the property in the subdivision. *See* Tex. Prop. Code Ann. § 209.003(a). It applies to associations that require mandatory membership for all or a majority of the owners of residential property within a subdivision, each of whom is subject to the association's dedicatory instruments. *Id.* § 209.003(b). Under Chapter

15

209, an "owner" is a "person who holds record title to property in a residential subdivision[.]" *Id.* § 209.002(6).

Paragraph 15 of the E-2 Restrictions and paragraph 14 of the E-3 Restrictions state that the Restrictions remain in place for successive ten year periods, "unless prior to the expiration of such period or any such successive ten (10) year period, as the case may be, the owners of a majority of lots in said section shall have executed and recorded an instrument changing these covenants and restrictions in whole or in part or releasing any portion of the property from any one or more, or all, of said restrictions the provisions of such instrument."

The record before us indicates that E-2 is comprised of approximately forty-nine lots and that forty-five lot owners received voting ballots by mail. Based on paragraph 15 of the E-2 Restrictions, at least twenty-five lot owners would need to vote in favor of terminating the Restrictions. The uncontroverted summary judgment evidence confirms that thirty lot owners voted in favor of terminating the E-2 Restrictions, while four lot owners voted against termination.

The record indicates that E-3 is comprised of approximately seventy-one lots and that sixty-seven of the seventy-one lot owners received voting ballots by mail. Based on paragraph 14 of the E-3 Restrictions, at least thirty-six lot owners would need to vote in favor of terminating the Restrictions. The uncontroverted evidence shows that forty lot owners voted in favor of terminating the Restrictions.

RCA argues that not all lot owners received notice of the vote or the ballots, and RCA points to Chapter 209 of the Texas Property Code as requiring all lot owners to have notice since they are entitled to vote on any matter being considered. However, Chapter 209, specifically section 209.0056, places the burden on the property owners' association to give written notice of an election or vote to property owners but does not require property owners who are calling an election or vote among themselves to give written notice to all lot owners within the Association. *See id.* § 209.0056. RCA does not point to any language in either the Property Code or the Restrictions that require said notice to be given by the Lot Owners to all members of the Association. We reject RCA's argument that the notices provided to the Lot Owners were insufficient because the notices were not given to all members of the Association. Paragraph 15 of the E-2 Restrictions and paragraph 14 for the E-3 Restrictions only require a majority vote from the Lot Owners in each section to "chang[e] the[] covenants and restrictions in whole or in part or releasing any portion of the property from any one or more, or all, of said restrictions." That said, we note that if the E-2 and E-3 Lot Owners had merely sought to eliminate the annual association charge under paragraph 9 (E-2 Restrictions) or paragraph 8 (E-3 Restrictions) then that paragraph would require a majority vote of the entire membership of the Association. According to the plain language of the Restrictions, that Annual Association Charge paragraphs are only "in effect so long as the[]

17

[R]estrictions are in force." Once the property is released from the Restrictions as provided for in paragraph 15 of the E-2 Restrictions and paragraph 14 for the E-3 Restrictions, it eliminates "all" Restrictions, including the annual association charge.

Additionally, RCA argues the votes received were invalid because the meeting notices and ballots were inaccurate, misleading, and referenced improper provisions in the Restrictions that likely confused the owners as to what was being amended. However, the record before this Court does not show that RCA presented any evidence that any of the Lot Owners did not understand what they were voting on, or that they were confused by the language in the ballot. RCA acknowledges that the Lot Owners of E-2 provided notice and ballots to 45 of the 49 lot owners, and E-3 provided notice and ballots to 67 of the 71 lot owners, and that a majority of the property owners in each section voted for termination of the Restrictions. Therefore, in accordance with the Restrictions' plain language in paragraph 15 (E-2) and paragraph 14 (E-3), the summary judgment evidence established as a matter of law that the majority of the Lot Owners voted to cancel the Restrictions encumbering sections E-2 and E-3. We conclude the trial court erred when it granted RCA's Counter-Motion for Summary Judgment and denied the Lot Owners' motions for summary judgment. We sustain issue one.[3]

---

[3]None of the parties pleaded ambiguity nor did they argue at trial or on appeal that the provisions in the Restrictions, Reservations, Covenants and Conditions Applicable to Section E-2 Rayburn Country, sections 9(d) and 15, and the

Included in the Restrictions were terms that the Restrictions are binding until May 31, 2006, and would be "automatically extended for three successive periods of ten (10) years each unless prior to the expiration of such period or any such successive ten (10) year period[]" the majority of owners change or release any portion of the Restrictions. Therefore, the original term of the Restrictions on the property renewed automatically on May 31, 2016, May 31, 2026, and May 31, 2036 absent the majority of owners in each section changing or removing some or all of the Restrictions before the successive renewal dates. The evidence in the record shows that the property owners in E-2 returned ballots dated February and March 2022. The ballots returned for property owners in E-3 are dated April and May 2022. The vote to remove the restrictions and release the Lot Owners' property from the Restrictions occurred within the ten-year period of restrictions that renewed on May 31, 2016. That said, the vote to remove the restrictions occurred before the renewal date of May 31, 2026. So, we conclude that the Restrictions remain in effect through May 30, 2026, but will not renew. The documents titled and recorded as Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-2 of Rayburn Country, Jasper County, Texas and Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections

Restrictions, Reservations, Covenants and Conditions Applicable to Section E-3 Rayburn Country, sections 8(d) and 14, were ambiguous.

E-3 of Rayburn Country, Jasper County, Texas do not indicate an effective date. Therefore, the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-2 of Rayburn Country, Jasper County, Texas and the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-3 of Rayburn Country, Jasper County, Texas must be amended and modified by Lot Owners to include language stating that the effective date of the termination shall be May 31, 2026.

Having determined that the Lot Owners properly terminated the Restrictions or released the property within Sections E-2 and E-3 in compliance with the Restrictions, and that the release and termination is effective May 31, 2026, we therefore sustain the Lot Owners' second issue challenging the mandatory injunction that required the Lot Owners, Charlie Beckett, and Erik Tolpo to prepare and file documents retracting the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-2 of Rayburn Country, Jasper County, Texas and the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-3 of Rayburn Country, Jasper County, Texas filed and recorded in Jasper County, Texas. The trial court's mandatory injunction requiring the retraction of said termination is set aside and is null and void, and the Lot Owners shall amend the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-2 of Rayburn Country, Jasper County,

20

Texas and the Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-3 of Rayburn Country, Jasper County, Texas to include the effective date as explained above.

In their third issue, the Lot Owners challenge the attorney's fees awards. Because of our disposition of the first issue, RCA is no longer a prevailing party. We sustain the Lot Owners' third issue and reverse that part of the trial court's judgment awarding attorney's fees to RCA and remand this issue to the trial court for further proceedings if necessary, including whether to award attorney's fees for the Lot Owners. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (providing for reasonable and necessary attorney's fees as are equitable and just in declaratory judgment actions).

## Conclusion

Having sustained the Lot Owners' issues, we reverse the trial court's judgment for RCA and render judgment that RCA take nothing. We further render judgment granting the Lot Owners' motions for summary judgment and require the Lot Owners to modify the documents titled and recorded as Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-2 of Rayburn Country, Jasper County, Texas and Termination of Declaration and Restrictions, Reservations, Covenants and Conditions for Sections E-3 of Rayburn Country, Jasper County, Texas, with an effective date of May 31, 2026. Finally, we

reverse the judgment awarding attorney's fees to RCA and remand that issue to the trial court for further proceedings consistent with this opinion, including whether the Lot Owners are entitled to an award of attorney's fees and if so, the amount thereof.

REVERSED AND RENDERED IN PART AND REMANDED IN PART.


W. SCOTT GOLEMON
Chief Justice

Submitted on October 28, 2025
Opinion Delivered March 12, 2026

Before Golemon, C.J., Johnson and Wright, JJ.